

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00445-CV

**PNP PETROLEUM I, LP**, PNP Management, Inc.,
Philip Zaccaria, and Cibolo Energy Operating, Inc.,
Appellants

v.

Edna Earnest **TAYLOR**, Elizabeth Earnest Herbst,
and U.S. Enercorp, Ltd.,
Appellees

From the 81st Judicial District Court, Frio County, Texas
Trial Court No. 10-05-00167CVF
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  May 21, 2014

REVERSED AND RENDERED

       This appeal arises from a dispute over whether the term of an oil and gas lease was extended by a payment made by the lessee. After the parties concluded their negotiation of the lease terms, the lease provided that the lessee could pay a "shut-in well royalty payment" to extend the term of the lease "[i]f, at the expiration of the primary term there is located on the leased premises a well or wells not producing oil/gas in paying quantities." After sustaining objections to the lessee's summary judgment evidence, and applying the generally accepted industry definition of "shut-in

royalty" to the language of the lease, the trial court construed the lease as providing that the lessee could pay a "shut-in royalty payment" to extend the term of the lease "[i]f at the expiration of the primary term there is located on the leased premises a well or wells ~~not~~ capable of producing oil/gas in paying quantities." The issues raised on appeal challenge the trial court's sustaining of the objections to the summary judgment evidence and its construction of the lease. Because we conclude that the trial court erroneously sustained the objections to the summary judgment evidence and consequently erred in its construction of the lease, we reverse the trial court's judgment and render judgment that the term of the lease was extended by the lessee's payment.

## BACKGROUND

PNP Petroleum I, LP entered into an Oil and Gas Lease with Edna Earnest Taylor and Elizabeth Earnest Herbst. The lease was dated June 1, 2009, and had a one year primary term. The lease stated that it would exist for the primary term and "as long thereafter as oil and/or gas in paying quantities is produced from and sold from the land subject to this lease." The lease further stated that its term was subject to the following specific savings clause which is the subject of the underlying dispute:

> ii. <u>SHUT-IN ROYALTY</u> (Saving) If, at the expiration of the primary term there is located on the leased premises a well or wells not producing oil/gas in paying quantities, Lessee may pay as royalty a sum of money equal to Twenty ($20) dollars per proration acre associated with each well not producing. The shut-in well royalty payment will extend the term of this lease for a period of one (1) year. Lessee may extend this lease for one (1) additional year by the payment of a like sum of money. <u>MAXIMUM SHUT-IN</u> It is agreed that this lease cannot be maintained by the payment of shut-in royalty for a period of more than two (2) years beyond the expiration date of the primary term.

At the time the lease was signed, thirteen wells existed on the leased land that were not producing. Those wells had been drilled by a prior lessee whose lease had expired.

On May 12, 2010, PNP sent Taylor and Herbst a letter stating its intent to extend the term of the lease pursuant to the afore-quoted clause (referred to herein as the "Savings Clause") and

enclosing payment of the requisite amount. Taylor and Herbst's attorney responded with a letter returning PNP's payment and stating that it was not their understanding that the lease could be extended by the payment under the terms of the Savings Clause. The letter concluded, "Absent proper extension of the lease, we understand that it will expire, by its own terms, on June 1, 2010." Upon receipt of this letter, PNP filed its original petition seeking a declaratory judgment that its payment extended the term of the lease.

PNP subsequently filed a motion for partial summary judgment requesting a declaration that the term of the lease was extended by its payment. PNP attached the affidavit of Phil Zaccaria[1] which established that thirteen wells existed on the land covered by the lease that were not producing oil or gas in paying quantities. PNP also attached the prior correspondence and copies of the checks documenting its payment.

In response, Taylor and Herbst filed a cross-motion for partial summary judgment. In their motion, they assert the payment could not extend the term of the lease because no well on the land covered by the lease was capable of producing oil or gas in paying quantities. Taylor and Herbst asserted that under Texas law, a shut-in royalty payment could extend the term of a lease only if a well on the leased land was capable of producing oil and gas in paying quantities.

Before the trial court ruled on the summary judgment motions, U.S. Enercorp, Ltd. filed a petition in intervention because it had acquired a top lease from Taylor and Herbst on September 14, 2010. U.S. Enercorp also filed a cross-motion for partial summary judgment seeking to confirm that the PNP lease had expired. PNP filed a motion to strike U.S. Enercorp's intervention, objections to its cross-motion, and a response to its cross-motion.

---

[1] Zaccaria is the president of PNP Management, Inc., which is PNP's general or managing partner.

On November 11, 2010, the trial court signed an order granting the motion for partial summary judgment filed by Taylor and Herbst and denying the motion for partial summary judgment filed by PNP. The order does not address the cross-motion filed by U.S. Enercorp, but the trial court subsequently signed an order denying PNP's motion to strike U.S. Enercorp's intervention.

Seven months later, PNP filed a motion to reconsider the summary judgment ruling. PNP attached a second affidavit from Zaccaria. In this affidavit, Zaccaria provides details of the negotiations between the parties preceding the signing of the lease. Exhibits to the affidavit include e-mail correspondence and drafts revealing changes made to the lease form during the negotiations. Taylor, Herbst, and U.S. Enercorp filed a joint response and objections to Zaccaria's second affidavit and the exhibits thereto. The objections globally assert that the affidavit and the attached exhibits are extraneous, parol evidence offered "to vary, contradict, and/or create ambiguity in the unambiguous PNP Leases." Hearsay and relevancy objections also were made to the affidavit and exhibits. PNP filed a reply asserting that the affidavit and its exhibits should be considered as surrounding circumstances.

In ruling on PNP's motion, the trial court signed an order stating that the pleadings, PNP's motion to reconsider, and the response to the motion to reconsider were considered by the trial court in determining that the motion should be denied. The trial court also signed an order sustaining most of the objections to Zaccaria's second affidavit and the exhibits thereto. The trial court later signed an amended order sustaining all of the objections. The trial court's order sustaining the objections further stated that the exhibits were stricken from the record and were not considered as part of PNP's motion to reconsider.

After the trial court denied PNP's motion to reconsider, U.S. Enercorp filed an amended petition adding claims against Zaccaria individually and against Cibolo Energy Operating, Inc.,[2] including claims for slander of title and conspiracy. Taylor and Herbst also amended their pleadings adding similar claims against Zaccaria and Cibolo Energy. After being brought into the litigation by these amended pleadings, Zaccaria and Cibolo Energy filed a motion to reconsider the trial court's summary judgment ruling, adopting by reference the arguments and evidence submitted in PNP's original motion and motion to reconsider. Zaccaria and Cibolo Energy also attached to their motion deposition excerpts from David Wallace, the oil and gas attorney who represented Taylor and Herbst in connection with the negotiation and drafting of the lease, and the original form of the lease used during the negotiations. Taylor, Herbst, and U.S. Enercorp filed a joint response and objections to the deposition excerpts and original form of the lease based on the parol evidence rule and relevancy. An additional hearsay objection was made with regard to the original form of the lease.

In ruling on Zaccaria and Cibolo Energy's motion to reconsider, the trial court signed an order stating that the pleadings, the motion to reconsider, and the joint response were considered by the trial court in determining that the motion to reconsider should be denied. The trial court also signed an order sustaining the objections to Wallace's deposition excerpts and the original form of the lease. The order sustaining the objections stated that the exhibits were stricken from the record and were not considered as part of Cibolo Energy and Zaccaria's motion.

The trial court thereafter signed an order severing the claims relating to the validity of the lease, including its order granting the partial summary judgment in favor of Taylor and Herbst. PNP filed a notice of appeal, as did Zaccaria and Cibolo Energy.

---

[2] The petition alleges that Cibolo Energy "was the record operator of certain wells on the expired PNP leases."

**MOTION FOR SUMMARY JUDGMENT/MOTION TO RECONSIDER**

A.      Standards of Review

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In such a case, "we render the judgment [that] the trial court should have rendered." *Id*.

"When a motion [to reconsider] is filed after the rendition of summary judgment, 'a trial court has the discretion to consider the grounds in [the] post-judgment motion and supporting proof[,] and reaffirm its summary judgment based on the entire record.'" *Charbonnet v. Shami*, No. 04-12-00711-CV, 2013 WL 2645720, at *5 (Tex. App.—San Antonio June 12, 2013, pet. denied) (mem. op.) (quoting Timothy Patton, *Summary Judgments in Texas* § 7.06[1] (3d ed. 2012)). "The trial court also has the discretion to simply deny a motion filed after the entry of summary judgment without considering its substance." *Id*. "In the latter situation, an appellate court need only consider arguments and evidence presented prior to the summary-judgment hearing." *Id*. "Thus, the efficacy of a post-judgment motion to preserve a complaint for appellate review depends upon whether the trial court affirmatively considers the new grounds and proof as memorialized by a written order.'" *Id*. (quoting Timothy Patton, *Summary Judgments in Texas* § 7.06[1] (3d ed. 2012)). Where the trial court affirmatively indicates on the record that it accepted

or considered the evidence attached to a motion to reconsider, this court reviews "the summary judgment based upon the grounds and proof in both prejudgment and post-judgment filings." Timothy Patton, *Summary Judgments in Texas* § 7.06[1] (3d ed. 2013); *see also Circle X Land & Cattle Co., Ltd. v. Mumford Ind. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding appellate court would review evidence attached to motion to reconsider where order reflected that the affidavits and exhibits were considered by the trial court); *Stephens v. Dolcefino*, 126 S.W.3d 120, 134 (Tex. App.—Houston [1st Dist.] 2003), *pet. denied*, 181 S.W.3d 741 (Tex. 2005) (same, where trial court verbally ruled that it would include the evidence offered at the hearing on the motion to reconsider in the summary judgment record); *but see McMahan v. Greenwood*, 108 S.W.3d 467, 500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding appellate court would not consider evidence attached to motion for new trial where order denying the motion stated that trial court considered the motion, responses, and argument of counsel but did not state that it considered the evidence attached to the motion).

B.     PNP's Motion to Reconsider

The order denying PNP's motion to reconsider does not state that the trial court considered the evidence attached to the motion. In fact, the order sustaining the objections to that evidence expressly states that the evidence was stricken from the record and was not considered as part of PNP's motion to reconsider.

Although an argument could be made that the trial court necessarily considered the evidence in ruling on the objections to that evidence, this court rejected a similar argument in the context of a late response to a motion for summary judgment. We reasoned, "if we were to hold a trial court's rulings on a party's objections constitute the requisite 'something in the record' indicating that the trial court considered a late-filed response, we would implicitly hold that a summary judgment movant must waive its right to complain on appeal about defects of form in

the respondent's summary judgment evidence to preserve its right to insist the respondent meet its burden of obtaining the trial court's permission to file a response late." *Neimes v. Ta*, 985 S.W.2d 132, 140 (Tex. App.—San Antonio 1998, pet. denied). "In short, … we would force summary judgment movants to waive one right to preserve another." *Id.*

Similarly, in this context, the appellees should not be forced to waive their right to have a trial court refuse to consider evidence attached to a motion to reconsider in order to obtain rulings on their objections to that evidence. Because the trial court's order denying the motion to reconsider does not state that it considered the evidence, the trial court's rulings on the objections to that evidence cannot be construed as showing that the evidence was considered by the trial court, especially since the order sustaining the objections also stated that the evidence was stricken from the record and not considered as part of the motion to reconsider. *But see Corniello v. State Bank & Trust, Dallas*, 344 S.W.3d 601, 609 (Tex. App.—Dallas 2011, no pet.) (appellate court reviewed late evidence where trial court ruled on objections and verbally indicated at the hearing that it considered the evidence). Because the trial court was within its discretion in refusing to consider the new evidence attached to PNP's motion to reconsider, we would be limited in our review of that ruling to the evidence and arguments presented at the initial summary judgment hearing if the trial court's ruling on PNP's motion to reconsider ended our inquiry. *Charbonnet*, 2013 WL 2645720, at *5 (quoting Timothy Patton, *Summary Judgments in Texas* § 7.06[1] (3d ed. 2012)). The trial court's ruling on PNP's motion to reconsider, however, does not end our inquiry because we also must consider the trial court's ruling on Zaccaria and Cibolo Energy's motion to reconsider.

C.      Zaccaria and Cibolo Energy's Motion to Reconsider

Although the appellees contend the same standard should apply in reviewing the motion to reconsider filed by Zaccaria and Cibolo Energy, we agree with Zaccaria and Cibolo Energy that

application of the same standard to their motion implicates due process concerns. "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995); *see also Long v. Yurrick*, 319 S.W.3d 944, 948 (Tex. App.—Austin 2010, no pet.) (reviewing due process requirements in summary judgment context); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 363 (Tex. App.—Dallas 2009, pet. denied). When Taylor and Herbst filed their initial motion for partial summary judgment, Zaccaria and Cibolo Energy were not parties to the lawsuit. Accordingly, they were not adverse parties subject to rule 166a's deadline for filing a response to the initial motion. TEX. R. CIV. P. 166a(c) (setting forth deadline for adverse party to file response). If this court were to hold that the trial court could refuse to consider the evidence incorporated in Zaccaria and Cibolo Energy's motion, Zaccaria and Cibolo Energy would be deprived of an opportunity to be heard in a meaningful manner on the issue of whether the lease term was extended. Although we recognize that Zaccaria and Cibolo Energy labeled their motion as a motion to reconsider, the law is well-established that courts look to the substance of the motion to determine the relief sought, not merely its title. *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999). Because Zaccaria and Cibolo Energy had a due process right to be heard in a meaningful manner on the issue of whether the lease term was extended, we hold that the trial court did not have the discretion to refuse to consider the evidence incorporated in their motion.[3]

---

[3] The appellees also assert that the trial court was within its discretion in refusing to consider the evidence attached to PNP's motion to reconsider because that evidence was available at the time of the hearing on the initial summary judgment motions. Although this argument might be persuasive as to PNP's motion to reconsider, it fails as to the motion filed by Zaccaria and Cibolo Energy for the due process reasons previously stated.

**SUMMARY JUDGMENT EVIDENCE**

PNP contends the trial court erred in sustaining the objections to Zaccaria's second affidavit and exhibits pertaining to the parties' negotiation of the lease. PNP's brief exclusively addresses the parol evidence rule. In the final point in their brief, Zaccaria and Cibolo Energy generally contend the trial court erred in sustaining the objections to the summary judgment evidence, but do not specifically address the objections.

A.      Waiver

The appellees assert that the only objection addressed in the appellants' briefs is the objection based on the parol evidence rule. Because the evidence also was excluded based on relevancy and hearsay objections, the appellees contend this court should summarily overrule the contention that the trial court abused its discretion in sustaining the objections. Zaccaria and Cibolo Energy respond to this waiver argument in their reply brief, specifically addressing the hearsay and relevancy objections. This court has held that where an appellant responds to an appellee's waiver argument in a reply brief by fully addressing the issues not addressed in the appellant's opening brief, this court will address the merits of the issue. *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 7-8 (Tex. App.—San Antonio 2004, pet. denied). Because Zaccaria and Cibolo Energy fully addressed the hearsay and relevancy objections in their reply brief, we consider the merits of the trial court's order sustaining the objections and striking the evidence from the record.

B.      Standard of Review

A trial court's rulings on objections to summary judgment evidence are reviewed under an abuse of discretion standard. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 31 (Tex. 1997); *In re Estate of Blankenship*, 392 S.W.3d 249, 258 (Tex. App.—San Antonio 2012, no pet.); *In re Estate of Denman*, 362 S.W.3d 134, 140 (Tex. App.—San Antonio 2011, pet. denied). "A trial

court abuses its discretion if it acts without reference to any guiding rules or principles." *In re Estate of Denman*, 362 S.W.3d at 140-41. "To obtain reversal for an erroneous exclusion or admission of evidence, the appellant must establish the error was harmful, that is, it was calculated to cause and probably did cause the rendition of an improper judgment." *Id*. at 141. "Errors in admission or exclusion of evidence are generally not reversible unless the appellant can show the whole case turns on the complained of evidence." *Id*.

C.      Parol Evidence Rule

The primary objection made to Zaccaria's second affidavit and the attached exhibits was that they were inadmissible extrinsic, parol evidence offered to contradict or create ambiguity in the lease. One of the key details PNP, Zaccaria, and Cibolo Energy sought to establish with this summary judgment evidence was the negotiation process in drafting the Savings Clause, and particularly the following red-lined changes which establish that the reference to "capable of" producing in paying quantities was stricken from the lease during the course of those negotiations:

> If, at the expiration of the primary term – or at any time thereafter, there is located on the leased premises a well or wells **not** ~~capable of~~ producing **oil/**gas in paying quantities **or being used as a salt-water injection well(s)**, ~~and such gas is not otherwise produced and sold in paying quantities for lack of suitable market and this lease is not otherwise being maintained in force and effect~~, Lessee may pay [to extend the lease term.]

In determining whether the trial court properly sustained the parol evidence objection to this evidence, we must consider the Texas Supreme Court's decisions in *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445 (Tex. 2011), and *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462 (Tex. 2011). For purposes of our analysis, we focus our attention on the trial court's exclusion of the lease drafts containing the negotiated additions and deletions, and particularly on the draft containing the above-referenced red-lined change.

1.       *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*

In *Anglo-Dutch Petroleum Int'l, Inc.*, the court considered a dispute over whether an attorney fee agreement was ambiguous. 352 S.W.3d at 446. The client contended the plain language of the agreement established that its agreement was with the law firm on whose letterhead the agreement was drafted, not the lawyer who personally signed the agreement. *Id*. The lawyer countered that the use of personal pronouns in the agreement, as well as surrounding circumstances, created an ambiguity that a jury was required to resolve. *Id*.

The court began its analysis by noting, "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Id*. at 449-450 (internal citations omitted). The court then noted that one of the circumstances to be considered in that case was the existence of a lawyer-client relationship between the parties because the lawyer's fiduciary duty covers contract negotiations between them. *Id*. at 450. With regard to other circumstances to be considered, the court asserted, "Other circumstances surrounding the execution of a contract may inform its consideration, ***but there are limits***." *Id*. at 451 (internal citations omitted, emphasis added). The court then explained:

> An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument.
>
> Understanding the context in which an agreement was made is essential in determining the parties' intent *as expressed in the agreement*, but it is the parties' expressed intent that the court must determine. Extrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated.

*Id*. (internal citations omitted, emphasis in original).

Because the trial court had determined that the agreement was ambiguous, "the parties offered extensive extrinsic evidence of their intent in the ten-day trial." *Id.* at 452. The court then noted,

> Given our conclusion that the agreement was not ambiguous, this evidence is of limited relevance. It cannot be used to show the parties' motives or intentions apart from the Fee Agreement; it can only provide the context in which the agreement was reached.

*Id.* The court then considered the context in which the agreement was reached, including evidence that the client proposed the terms of the agreement. *Id.* After considering this evidence, the court concluded, "the circumstances in which the Fee Agreement was executed do not suggest that the parties must have intended something different from what they plainly stated." *Id.* at 453.

2. *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*

In *Houston Exploration Co.*, the court considered whether an insurance policy provided indemnity for certain expenses. 352 S.W.3d at 464. The court noted that the insurance "[c]overage was negotiated in the London market, and as is customary there, the parties reached agreement by lining through provisions in a form policy." *Id.* A provision in the form policy would have required reimbursement for the disputed expenses, and the question presented was "whether the strike-through reflects the parties' intention that those expenses would not be reimbursed." *Id.* The court held the answer to the question was "yes," concluding, "[d]eletions from a draft agreement do not always indicate the parties' intent, but they do when, as here, they are part of the customary negotiation process." *Id.*

In reaching this holding, the court stated, "[a] written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule." *Id.* at 469. The court also stated that the parol evidence rule does not "prohibit consideration of surrounding

circumstances that inform, rather than vary from or contradict, the contract text." *Id.* Finally, the court asserted that it previously had said, "[n]egotiations of the parties may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole." *Id.* at 469-70 (internal citations omitted). The court then cited two earlier decisions (in which deletions from a printed form appeared on the face of the final agreement) as holding that "deletions in a printed form agreement are indicative of the parties' intent." *Id.* at 470. In reaching its holding, the court stressed that the parties did not write the policy from scratch but deleted some payment requirements while keeping others. *Id.* The court then concluded, "To see the deletions as irrelevant blinks reality." *Id.*

In addressing an argument that deletions in a printed form agreement should be treated the same as deletions in a draft, the court first noted that changes in a printed form are accorded special weight in construing an agreement. *Id.* at 472. The court then also stated, "It may be that deletions in drafts indicate the parties' intent in the final agreement, but we need not decide that issue here." *Id.*

3.   *Analysis*

This court has generally adopted the language in *Houston Exploration Co.* which allows courts to consider contract negotiations as surrounding circumstances in construing a lease. *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 495, 499-500 (Tex. App.—San Antonio 2013, pet. filed). In *BP Am. Prod. Co.*, we stated, "We consider surrounding circumstances as a construction aid to determine the parties' intentions as expressed in the plain language of the lease." *Id.* at 500. We noted, "'[N]egotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish … (c) the meaning of the writing, whether or not integrated.'" *Id.* (quoting *Houston Exploration Co.*, 352 S.W.3d at 470 n. 28). In *BP Am. Prod. Co.*, this court considered evidence of the parties' negotiations, including the offers and counter-offers made. 419 S.W.3d at

500-01. The opinion quotes correspondence between the parties during the negotiations and refers to requests to revise drafts, language in revised drafts, and deletions made in drafts. *Id*.

Although we apply an abuse of discretion standard in reviewing the trial court's exclusion of the lease drafts in the instant case, trial courts have no discretion in determining what the law is or in applying the law to the facts. *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 656 (Tex. 2005). Because the parol evidence rule did not bar the introduction of the evidence of the deletions made to the lease drafts during the parties' negotiations, the trial court abused its discretion in sustaining the objections to the lease drafts on this basis. *See Houston Exploration Co.*, 352 S.W.3d at 469-70, 472; *BP Am. Prod. Co.*, 419 S.W.3d at 499-501.

D.      Hearsay

The appellees also asserted hearsay objections with regard to the revisions contained in the lease drafts. This court, however, has held, "An out of court statement, offered to show *what* was said, rather than the *truth* of what was said, is not hearsay." *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.*, 163 S.W.3d 120, 126 (Tex. App.—San Antonio 2005, no pet.). Because the deletions and revisions in the lease drafts were offered to show what was said, the trial court also abused its discretion in sustaining the hearsay objections to the lease drafts.

E.      Relevance

The final objection made by the appellees to the lease drafts was relevancy. "Relevant evidence is evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *In re Estate of Denman*, 362 S.W.3d at 141; TEX. R. EVID. 401. "The test for relevancy is satisfied only when there is some logical connection between the fact offered and the fact to be proven." *In re Estate of Denman*, 362 S.W.3d at 141. In this case, the lease drafts have a logical connection in determining the intent of the parties in selecting the language used in the Savings

Clause. Accordingly, the trial court abused its discretion in sustaining the relevancy objection. *See Houston Exploration Co.*, 352 S.W.3d at 470 ("To see the deletions as irrelevant blinks reality.").

### INTERPRETATION OF OIL AND GAS LEASE

The crux of the dispute between the parties with regard to the interpretation of the oil and gas lease is whether the language can be read as requiring the wells in existence at the end of the primary term to be "capable of producing in paying quantities" before the payment under the Savings Clause will extend the term of the lease.

"Determining whether a contract is ambiguous and construing an unambiguous contract are questions of law which we review de novo." *BP Am. Prod. Co.*, 419 S.W.3d at 495; *see also Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006); *Coker v. Coker*, 650 S.W.3d 391, 394 (Tex. 1983). "'If [a] written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.'" *BP Am. Prod. Co.*, 419 S.W.3d at 497 (quoting *Coker*, 650 S.W.2d at 393). "'In construing an unambiguous oil and gas lease our task is to ascertain the parties' intentions as expressed in the lease.'" *Id.* (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). "We examine the plain language of the entire lease agreement, consider the interaction between each of its provisions, and seek 'to harmonize and give effect to all the [lease] provisions.'" *Id.* (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)).

At the heart of the dispute in this case is the law that states, "If a lease term has a generally accepted meaning in the oil and gas industry, we use its generally accepted meaning." *Id.* The appellees contend that the use of the term "shut-in royalty" has special meaning in the oil and gas industry. Although PNP, Zaccaria, and Cibolo Energy disagree with the engrafting of this law into

the lease, they do not appear to dispute the legal principle itself, which can be summarized as follows:

> A shut-in royalty clause provides for a substitute or contractual method of production, which will maintain the lease in force and effect when a gas well is drilled and for which no market exists. The shut-in royalty is considered constructive production and will maintain the lease if its terms are satisfied.
>
> However, contrary to appellants' argument on appeal, for a well to be maintained by the payment of shut-in royalties, it must be *capable* of producing gas in paying quantities at the time it is shut-in. This is true even though the shut-in royalty clause makes no mention of capacity for paying production.

*Hydrocarbon Mgmt., Inc. v. Tracker Exp., Inc.*, 861 S.W.2d 427, 432-33 (Tex. App.—Amarillo 1993, no writ) (internal citations omitted, emphasis in original); *see also Kidd v. Hoggett*, 331 S.W.2d 515, 519 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.).

In the instant case, the Savings Clause provided:

> ii. <u>SHUT-IN ROYALTY</u> (Saving) If, at the expiration of the primary term there is located on the leased premises a well or wells not producing oil/gas in paying quantities, Lessee may pay as royalty a sum of money equal to Twenty ($20) dollars per proration acre associated with each well not producing. The shut-in well royalty payment will extend the term of this lease for a period of one (1) year. Lessee may extend this lease for one (1) additional year by the payment of a like sum of money. <u>MAXIMUM SHUT-IN</u> It is agreed that this lease cannot be maintained by the payment of shut-in royalty for a period of more than two (2) years beyond the expiration date of the primary term.

Because the Savings Clause refers to a "shut-in royalty" payment even independent of its heading,[4] the general legal principle would appear to apply to our construction of the lease.

When the parties' negotiations as reflected in the lease drafts are considered, however, an express reference to "***capable of***" producing in paying quantities was stricken from the draft as follows:

> If, at the expiration of the primary term – or at any time thereafter, there is located on the leased premises a well or wells **not** ~~capable of~~ producing **oil/**gas in

---

[4] PNP correctly argues that the title of a contractual provision is not determinative, and the greater weight must be given to the operative contractual clause. *Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004).

paying quantities **or being used as a salt-water injection well(s)**, ~~and such gas is not otherwise produced and sold in paying quantities for lack of suitable market and this lease is not otherwise being maintained in force and effect~~, Lessee may pay [to extend the lease term.]

These negotiations deviate from the general law that would engraft the "***capable of***" producing in paying quantities requirement into this lease.[5]  Therefore, taking into consideration the parties' negotiations as reflected in the lease drafts and the plain language of the lease, we hold that the parties did not intend to apply the oil and gas industry's generally accepted meaning of the term "shut-in royalty" in the Savings Clause.  Quite simply, the parties could not have intended for the law to engraft into their agreement the very language they removed.  Because wells were located on the leased premises that were not producing oil/gas in paying quantities at the end of the primary term, we hold PNP's May 12, 2010 payment extended the term of the lease as a matter of law.

### CONCLUSION

The trial court's orders sustaining the objections to the lease drafts and denying the motion filed by Zaccaria and Cibolo Energy are reversed, and judgment is rendered that the term of the lease was extended by PNP's May 12, 2010 payment.

Catherine Stone, Chief Justice

---

[5] This conflict also demonstrates how Zaccaria and Cibolo Energy were harmed by the trial court's exclusion of the lease drafts. *See In re Estate of Denman*, 362 S.W.3d at 141.