ACCEPTED
04-15-00096-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/10/2015 5:22:20 PM
KEITH HOTTLE
CLERK

**NO. 04-15-00096-CV**

_____

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

9/10/2015 5:22:20 PM

KEITH E. HOTTLE
Clerk

_____

ALS 88 DESIGN BUILD, LLC,

Appellant,

V.

MOAB CONSTRUCTION,

Appellee.

_____

On Appeal from the 407th Judicial District Court of Bexar County, Texas
Trial Court No. 2014-CI-03033
Honorable Gloria Saldana, Judge Presiding

_____

**APPELLEE'S BRIEF**

_____

Respectfully submitted,

Thomas C. Hall
THOMAS C. HALL, P.C.
115 E. Travis Street, Suite 700
San Antonio, TX 78205
State Bar No. 08774550
Email - hall@tomhall-lawyer.com
Telephone - (210)222-2000
Facsimile - (210)222-1156
**ATTORNEYS FOR APPELLEE**

**ORAL ARGUMENT REQUESTED**

1

## IDENTITY OF PARTIES AND COUNSEL

1. Moab Construction Company / Melissa Madsen (Owner)
PLAINTIFF / APPELLEE

    Tom Hall
    115 E. Travis Street, Ste. 700
    San Antonio, TX 78205
    COUNSEL FOR PLAINTIFF / APPELLANT

2. ALS88 Design Build, LLC / Annastacia Sequoya (Owner)
DEFENDANT / APPELLANT

    Regina Bacon Criswell
    Carriage Place
    7803 Bent Briar
    San Antonio, TX 78250
    COUNSEL FOR DEFENDANT / APPELLANT

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL    2

INDEX OF AUTHORITIES    4

REQUEST FOR ORAL ARGUMENT    5

STATEMENT OF THE CASE    6

STATEMENT OF FACTS    6

ISSUE PRESENTED    6

SUMMARY OF THE ARGUMENT    8

    ISSUE 1: The trial court did not err in denying ALS 88's
Motion for Judgment N.O.V. because the economic loss
doctrine does not foreclose MOAB's negligence claim.    9

    ISSUE 2: The trial court did not err in denying ALS 88's
Motion for Directed Verdict on the issue of negligence.    10

    ISSUE 3: The trial court did not err in denying ALS 88's
Motion for Directed Verdict on the issue of damages.    14

    ISSUE 4: The trial court did not err in admitting the
exhibits in question, and excluding the testimony of
Cullen Patrick Coltrane.    15

ARGUMENT    9

PRAYER    19

CERTIFICATE OF SERVICE    19

CERTIFICATE OF COMPLIANCE    20

# INDEX OF AUTHORITIES

**Cases**                                                                                    **Page**

*Case Corp. v. Hi Class Bus. Sys. of Am., Inc.*,  184 SW3d 760, 782
(Tex. App. 2005, affd in part rev'd in part)                                                    17

*Guevara v. Ferrer*, 247 SW3d 662 (Tex. 2007)                                                   10

*Harkins v. Crews*, 907 SW2d 51 (Tex. App. - San Antonio, 1995,
    writ denied)                                                                                15

*L/STV, A Joint Venture of Lockwood, Andrews & Newman, Inc.
    and STV Incorporated v. Martin K. Eby construction Company,
    Inc.*, 435 SW3d 234 (Tex. 2014)                                                              9

*Ledesma v. Texas Employers' Insurance Association*, 795 SW2d 337
    (Tex. App. - Beau., 1990, no writ)                                                          18

*McGowan v. State*, 375 SW3d 585 (Tex. App. - Houston [14th],
    2012, Pet. Den'd)                                                                           16

*Moore v. Memorial Hermann Hospital System*, Inc., 140 SW3d 870
    (Tex. App. - Hou. [14th], 2004, no writ)                                                  17-18

*PNP Petroleum I, LP, PNP Management, Inc. v. Taylor*, 438 SW3d
    723 (Tex. App. - San Antonio, 2014, rev. den'd)                                           15-16

*Settlement Funding, LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590
    (DC-Houston, 2014)                                                                          17

*Sharyland Water Supply Corporation v. City of Alton*, 354 SW3d 407
    (Tex. 2011)                                                                                 10

**Statutes and Other Authorities**                                                          **Page**

Tex. Civ. Prac. & Rem. Code, §150.001-.003                                                       9

Tex. Civ. Prac. & Rem. Code §150.002(e)                                                          6

TRCP, Rule 193.6(a)                                                                             17

# REQUEST FOR ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 75, Appellee requests oral argument in this case because the nature of the relationship between the Plaintiff and Defendant is somewhat unusual and the facts are complex.

## STATEMENT OF THE CASE

Appellee generally agrees with the Statement of the Case by Appellant, but would disagree that MOAB terminated the services of ALS 88 for its own convenience. Appellee also disagrees with the statement that after the termination of ALS 88, that MOAB was unable to complete the project through no fault of ALS 88. In addition, MOAB disputes that it failed to file an Affidavit in accordance with Tex. Civ. Prac. & Rem. Code §150.002(e).

## ISSUES PRESENTED

**ISSUE 1:** The trial court did not err in denying ALS 88's Motion for Judgment N.O.V. because the economic loss doctrine does not foreclose MOAB's negligence claim.

**ISSUE 2:** The trial court did not err in denying ALS 88's Motion for Directed Verdict on the issue of negligence.

**ISSUE 3:** The trial court did not err in denying ALS 88's Motion for Directed Verdict on the issue of damages.

**ISSUE 4:** The trial court did not err in admitting the exhibits in question, and excluding the testimony of Cullen Patrick Coltrane.

## STATEMENT OF FACTS

MOAB was awarded a contract to construct a new administration building for the Internation Boundry and Water Commission near Zapata. MOAB hired ALS 88 as the architect on the project. MOAB sued ALS 88 alleging negligence in the completion of

the project that MOAB hired ALS 88 to do. One of the biggest complaints against ALS 88 was the fact that ALS 88 continually went around MOAB, the general contractor from the contract in question, and dealt and communicated with the owner of the project directly. (RR vol. 4, page 55-59) One of the major issues was that ALS 88's 75% design product was sent directly to the owner, and MOAB was not even aware of this fact. (RR vol. 4, page 59) Among other problems with the 75% design drawings is that the design sponsored by ALS88 cost two times what the budget for the project was. (RR vol. 4, page 62) This created expectations on the part of the owner that the building that they were going to receive was consistent with those design drawings. (RR vol. 4, page 63) As a result of those expectations, dissatisfaction resulted on the part of the owner, which continued. (RR vol. 4, page 63-4) MOAB disputes the allegations (Brief p. 4) that ALS 88 negated each allegation by competent evidence. MOAB did identify many instances in which ALS 88 failed to respond appropriately to inquiries and requests for revisions in the design. (RR - vol. 4, pages 67-75). Melissa Madsen, president of MOAB, testified that the 75% design drawings were not revised in order to conform to design comments made by the owner. (RR vol. 4, page 67) Exhibit 19 was introduced into evidence, which documented that ALS 88 had not responded to the list of comments and questions from the owner. (RR vol. 4, page 67-8) In response to requests that the comments be responded to, ALS 88 indicated that it would be filing a claim for

the money owed. (RR vol. 4, page 69)  Melissa Madsen testified that it was known by all involved in the project, that the 75% design comments had never been addressed. (RR vol. 4, page 71)  This is an ongoing dialogue between MOAB and ALS 88 to attempt to get ALS 88 to revise the 75% design drawings to incorporate the comments and questions raised by the owner. (RR vol. 4, page 74)  Melissa Madsen testified that the 75% revised drawings were never submitted and that ALS 88 went to 90% drawings without the revisions. (RR vol. 4, page 75)  The 90% design drawings were rejected by the owner, because ALS 88 Design refused to incorporate the comments. (RR vol. 4, page 76)  The first design comment made by the owner was that the owner would be the copyright owner of all aspects of the project, including ALS 88 autoCAD for the project.  As is shown below, ALS 88 refused to turn over the autoCAD drawing to the owner.  (RR vol. 5, page 154)  In addition, Melissa Madsen detailed many of the various ways in which the design drawings done by ALS 88 were flawed. (RR vol. 5, page 172-3)

## SUMMARY OF THE ARGUMENT

The economic loss doctrine does not preclude recovery in negligence when the basis of the lawsuit is professional negligence.  There was ample evidence of what ALS 88's obligations were under the contract with MOAB, and ample evidence that ALS 88 did not comply with those obligations.  MOAB sponsored testimony that the actions of ALS 88 resulted in delays of the project, and ultimately MOAB being terminated from

the project, and ample evidence of the damages resulting therefrom. ALS 88 did not even come close to negating the acts of negligence claim by MOAB. There is no evidence that the trial court's ruling on exhibits and testimony caused the rendition of an improper verdict.

## ARGUMENT

**ISSUE 1: The trial court did not err in denying ALS 88's Motion for Judgment N.O.V. because the economic loss doctrine does not foreclose MOAB's negligence claim.**

Appellant relies upon *L/STV, A Joint Venture of Lockwood, Andrews & Newman, Inc. and STV Incorporated v. Martin K. Eby construction Company, Inc.*, 435 SW3d 234 (Tex. 2014) for the proposition that the economic loss doctrine precludes recovery of damages in this case. That is clearly not true. In discussing the economic loss rule, the Supreme Court notes that Texas courts have applied the rule to actions for negligence performed on the services but that, "Professional malpractice cases are an exception." at 243-4 It discusses malpractice cases against lawyers, and notes that, "These factors also support negligent actions against other professionals." at 244, citing footnote 42, which footnote cites the Tex. Civ. Prac. & Rem. Code, §150.001-.003 and mentions architects expressly. It also notes that whether and how to apply the economic loss rule does not lend itself to easy answers or broad pronouncements, but rather depends on the rationales in a particular situation. At 245-6 It is interesting to note that one of the

rationales in question is whether or not the architect contracts directly with the owner or the general contractor. As in here, the contract in question was between the architect and the general contractor. (Exhibit 4, RR vol. 4, page 27) The analysis by the Court is grounded in the different principals that apply to negligence law and contract law, and, in this case, since the parties contracted at arms length, there is no basis upon which to apply the economic loss rule.

The Appellant also cites *Sharyland Water Supply Corporation v. City of Alton*, 354 SW3d 407 (Tex. 2011). In that case, the City sued the Defendant for breach of contract alleging that the sewer system installed by the Defendant was negligently installed. The Court of Appeals had ruled that the economic loss rule applied and barred the claim in question. In holding that the economic loss rule did not preclude recovery in this case, the Supreme Court stated that the economic loss rule did not bar recovery in that case and notes that, "The operation of the economic loss rule is not well mapped, and whether there is a 'rule' at all is a subject of contention." at 419

**ISSUE 2:** **The trial court did not err in denying ALS 88's Motion for Directed Verdict on the issue of negligence.**

Appellee would point out that the actions of the Defendant, a professional architect, were clearly within the rule that a lay person could determine that the actions were not within the standard of care. *Guevara v. Ferrer*, 247 SW3d 662 (Tex. 2007) Even if expert testimony was necessary, there was such testimony in this case. The

primary allegations against the Defendant in this case are that the Defendant, on an ongoing basis, refused to deal directly with the contractor, but rather went around the contractor and dealt directly with the owner. The Defendant even admitted that she did not follow the directive from the owner about no direct communication with the owner. (RR vol. 5, page 51) In addition, a significant complaint was that the Defendant refused to incorporate design changes requested by the owner into the architectural designs. The conduct of the Defendant in this case is so clearly outside the realm of reasonableness, that any lay person could determine that the conduct in question was not what a reasonably prudent architect would do. There was ample testimony of the fact that the owner and the general contractor have control over the quality of the work that is done by the architect in a design/build case like this. (RR vol. 4, page 53) The Defendant herself admitted that she was contractually obligated and also obligated by custom in the industry to respond to MOAB's comments and to the owner's comments. (RR vol. 6, page 60) The Defendant admitted she did not obey the directive. (RR vol 6, page 51) As set forth, infra, the Defendant repeatedly refused to incorporate the owner's design review comments into the architectural design. When asked directly if she refused to make any changes in the 75% design drawings in response to the comments, the Defendant said:

ANSWER: All I – I'm not going to answer that. I don't think it's fair. This was sent to me before even the submittal was done, the 90 percent was done, and we don't have those documents to check, so I can't answer that. And I was getting these daily from him. Even Melissa said he was antagonistic. And I'm like trying to be as nice as I can, but when I'm being bothered in the middle of trying to get some work done, he's changing the roofing on me, and we still have no budget, and I pull out a set of drawings and send it to him and then he turns around and does this, it wasn't even part of the – in other words, he was antagonistic, trying to fight. And I have an e-mail I sent to Melissa, one of my engineers almost got into a fist fight with him at one of the meetings.

QUESTION: So are you –

ANSWER: So I don't – I can't – I'm not going to comment on this at all because it is what it is.

QUESTION: You're not going to answer my question?

ANSWER: No. (RR vol. 6, page 71)

In addition, Exhibit 6 was entered into evidence, which is an email from the owner containing the design comments on the architect's design, which instructs the Defendant to respond directly to MOAB with the responses. (RR vol. 4, page 64)   In fact, the Defendant took the position that the 75% design drawings were complete when they were sent in, even though it was known that the 75% design comments by the owner had never been addressed. (RR vol. 6, page 71)

In addition, the testimony of Melissa Madsen quoted in the Brief of the Appellant at page 11 indicates that Ms. Madsen was familiar with the way an architect produces work and the design/build context, and that in her experience ALS 88 did not respond to the design/build appropriately in this situation without objection.

**Proximate Cause**

There is ample evidence of proximate cause in this case. Exhibit 27 was introduced into evidence, which is an email from MOAB to ALS 88 imploring the Defendant to provide the revised 75% design drawings and advising her that the delays caused by the Defendant resulted in the project being behind schedule, and they must get caught up. Melissa Madsen also indicated that the actions of ALS made the project unsalvageable. (RR vol. 5, page 8) The owner, at that point, took the position that they were not going to tolerate any more delays. (RR vol. 4, page 75) Because of these delays caused by the Defendant, the owner would not allow MOAB any further delays, and, as a result of an extreme rain, the project was further delayed resulting in the termination of MOAB. (RR vol. 4, page 81-2) In addition, there is some evidence of proximate cause in the Defendant's actions in refusing to turn over the CAD drawings. Exhibit 3 was admitted into evidence, which is a letter from ALS 88 Design indicating that Teresa Scott of the Small Business Administration called her and said that the owner was going to terminate the contract per default with MOAB because ALS 88 had not turned in the

13

AutoCAD drawings with the 90% construction documents. (RR vol 5, page 166) ALS 88 still refused to turn the work over.

The Defendant did not conclusively negate MOAB's negligence claims. In this regard, the Appellant argues that MOAB failed to identify a single design flaw. Nothing could be further from the truth. The Plaintiff testified extensively about the design flaws in the architect's drawings. (RR vol. 5, page 172-3)

Appellant also argues that the evidence conclusively establishes that Defendant was not required to provide design documents and AutoCAD software as asserted by the Plaintiff. (Brief p. 16) There is clearly evidence that ALS was obligated to provide the CAD software because the owner demanded it. (RR vol. 5, page 153)

**ISSUE 3:** **The trial court did not err in denying ALS 88's Motion for Directed Verdict on the issue of damages.**

Appellant argues (Brief p. 17) that out of pocket damages are recoverable for a party's reliance on the subject contract. That is exactly what MOAB testified as to what the damages in this case are. Ms. Madsen testified that MOAB was paid a total of $329,383.05 for the job. MOAB's cost in running this project through the time of termination was $929,887.74. The difference is what MOAB was requesting in terms of damages, which number is $600,504.69, which is what the jury awarded. (RR vol. 5, page 25) The jury was certainly free to determine that the loss on the project was a proximate result of the Defendant's conduct. Appellant also faults Plaintiff for failing to plead

special damages, thereby waiving the right to recover them, citing *Harkins v. Crews*, 907 SW2d 51 (Tex. App. - San Antonio, 1995, writ denied). What that case deals with is the trial court failing to assess stipulated damages due to a temporary estate administration. The ruling of the Court is that the Appellees did not plead to recover the cost of the temporary administrator, nor was such an issue put to the jury. At 61

### Failure to Plead for Special Damages

Appellant argues, without any real support, that the Plaintiff was not entitled to recover special damages because of failure to plead same. Appellee would demonstrate that Plaintiff clearly put Defendant on notice of the damages sought in paragraph 4 of the Plaintiff's Original Petition which alleges that, as a result of the actions of the Defendant herein, the project in question was placed in jeopardy and such actions were a proximate cause of damages to the Plaintiff in an amount in excess of the minimum jurisdiction of the Court. The pleading in question was never the subject of any special exceptions by the Defendant. (CR p. 2)

> **ISSUE 4:** **The trial court did not err in admitting the exhibits in question, and excluding the testimony of Cullen Patrick Coltrane.**

Initially, Appellee would demonstrate that the Appellant completely fails to even attempt to allege that the rulings on the exhibits and testimony in question constitute reversible error. As this Court has held previously in *PNP Petroleum I, LP, PNP*

*Management, Inc. v. Taylor*, 438 SW3d 723 (Tex. App. - San Antonio, 2014, writ den'd), errors in admission or exclusion of evidence are generally not reversible unless Appellant can show the whole case turns on the complained of evidence. At 733  The objection to Exhibit 5 was that it was not a business record because it's an email from MOAB's employee. (RR vol. 2, page 28)   Clearly, an employee of an entity can generate emails that comply with the Business Records Act.

The objection to Exhibit 5 is that it's a document that the Plaintiff received from the Defendant. (RR vol. 4, page 30)   It is not at all clear what the objection is except that it somehow does not comply with the Business Records Act.

Likewise, Exhibit 6 is an email received from the Defendant.  The argument apparently is that a document received and generated by another party cannot be a business record.  This is clearly not the case.

### Plaintiff's Exhibit 12, 13, 22 and 25

Appellant cites no authority for the argument in regard to Plaintiff's Exhibit 12, 13, 22 and 25, and, therefore the same is waived.

Exhibit 12 was an email received by Appellee from the owner of the business concerning the project made the basis of the lawsuit.  Emails are admissible under the Business Records Act, *McGowan v. State*, 375 SW3d 585 (Tex. App. - Houston [14th], 2012, Pet. Den'd).

## Testimony of Appellee

Appellant complains of the testimony of the owner as to what expectations they had as far as the project was concerned. Statements of contracting parties have been held to be exceptions to hearsay under state of mind. *Settlement Funding, LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590 (DC-Houston, 2014) In addition, in *Case Corp. v. Hi Class Bus. Sys. of Am., Inc.*, 184 SW3d 760, 782 (Tex. App. 2005, affd in part rev'd in part) the Court held that similar statements were admissible. HBS argued in the trial court and on appeal that this exhibit was not offered for the truth of the statements recounted, but rather to show the statements were made; it was a statement of operative facts; and it met several exceptions to the hearsay rule, i.e., the exhibit is a business record and the statements show existing state of mind, are present sense impressions, and admissions of Case's agents.

## Testimony of Cullon Patrick Coletrane

It is undisputed that Mr. Coletrane was not identified in response to a Request for Disclosure sent to the Defendant ALS 88. The argument is made that in designating subcontractors of MOAB that was sufficient to allow the testimony and that he ws a rebuttal witness and was not required to be identified on the issue of Ms. Madsen's testimony about cost loaded budgets. Because the witness was not properly identified, under TRCP, Rule 193.6(a), the exclusion of the testimony is automatic. *Moore v.*

*Memorial Hermann Hospital System*, Inc., 140 SW3d 870 (Tex. App. - Hou. [14th], 2004, no writ) addressed a situation in which a trial court excluded testimony of a rebuttal expert. In noting that the standard of review is abuse of discretion, and noting that the burden is to establish that the ruling probably caused the rendition of an improper Judgment, the Court affirmed the refusal to let the undesignated witness testify. In that case the witness was a pharmacist, and the pharmacy itself was identified. Although Appellant refers to Mr. Coletrane as a professional architect, in his proffer, Mr. Coletrane testified that he was a landscape architect. (RR vol. 6, page 162) Interestingly, Mr. Coletrane was asked about the cost loaded budget, which was the area upon which counsel argued that his testimony was admissible (RR vol. 6, page 155). He was asked if, in the five design build projects that he worked on before, whether or not he was provided with a cost loaded budget by the contractor early on in the project, and he said, "No." (RR vol. 6, page 163) In *Ledesma v. Texas Employers' Insurance Association*, 795 SW2d 337 (Tex. App. - Beau., 1990, no writ), one of the parties attempted to call a witness who had not been identified by name. The proponent of the testimony argued, as Appellant does here, that the other party would not be surprised by the witness as the name of the pharmacy had been included in some supplemental answers provided to the party. The trial court refused to permit the testimony of the unidentified witness, and the Court of Appeals ruled that that was not an abuse of discretion.

WHEREFORE, PREMISES CONSIDERED, Appellee prays that the opinion of the trial court be in all things affirmed.

Respectfully submitted,

THOMAS C. HALL, P.C.

**/s/ Thomas C. Hall**

By: _____

Thomas C. Hall
115 E. Travis Street
Suite 700
San Antonio, TX 78205
State Bar No. 08774550
Email - hall@tomhall-lawyer.com
Telephone - (210)222-2000
Facsimile - (210)222-1156
ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by Efile Services (rbclaw@yahoo.com) and also by facsimile to the following, on this the 11th day of September, 2015.

Regina Bacon Criswell
Criswell & Fisch
Carriage Place
7803 Bent Briar
San Antonio, TX 78250
Fax: 210-251-2071

**/s/ Thomas C. Hall**

_____

THOMAS C. HALL

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with the rules governing the length and font requirements for briefs prepared by electronic means. The Brief was prepared using WordPerfect X6. According to the software used to prepare this brief, the total word count, including footnotes, but not including those sections excluded by rule, is 3,184. The "Garamond" font is used in this brief, with 14 pt. font or greater for the body of the brief, and 12 pt. font for any footnotes.

**/s/ Thomas C. Hall**

_____

THOMAS C. HALL