**Opinion issued January 29, 2026.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00954-CV

———————————

**WANDA JOYCE SMITH, Appellant**

**V.**

**CASEY LENDING, LLC AND TAI PHAN, Appellees**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-49408**

---

## OPINION

Appellant Wanda Joyce Smith filed a bill of review challenging a judgment rendered in favor of Appellee Casey Lending, LLC in a delinquent tax suit allowing it to foreclose on tax liens encumbering certain real property over which Smith claims she owns an undivided one-third interest. In her bill of review, Smith also

asserted counterclaims against Casey Lending and third-party claims against Appellee Tai Phan, who purchased the property at a foreclosure sale.

On appeal, Smith challenges the trial court's order granting summary judgment in favor of Casey Lending and Phan dismissing Smith's claims with prejudice. We dismiss Smith's counterclaims against Casey Lending and third-party claims against Phan for lack of jurisdiction, and we reverse the trial court's order granting summary judgment in favor of Casey Lending and remand for further proceedings on Smith's bill of review.

## Background

In 2008, siblings Karen F. Ferreira, Mary Hope Schrick, and Thomas Charles Schrick each inherited a one-third undivided interest in residential property located in Harris County, Texas ("Property"). Property taxes remained unpaid from 2006 through 2013 prompting a suit by taxing authorities to recover the delinquent taxes and to foreclose on tax liens levied against the Property for the corresponding tax years ("2013 Tax Suit").[1]

After the 2013 Tax Suit was filed, the siblings executed several documents concerning the Property. In April 2014, Mary Hope executed a "grant deed" conveying her one-third undivided interest in the Property to Smith. A few months

---

[1] The claimants were Harris County, the City of Houston, Houston Community College System, and Alief Independent School District.

later, in October 2014, Mary Hope executed a general warranty deed conveying the same one-third undivided interest in the Property to her brother Thomas. Also in October 2014, Karen executed a general warranty deed conveying her one-third undivided interest in the Property to Thomas, and Thomas executed a Property Tax Lien Payment Agreement ("Promissory Note") in favor of Casey Lending in the principal amount of $24,778.32 for the payment of the delinquent taxes for tax years 2006 through 2013. Thomas also executed a Property Tax Lien Contract ("Deed of Trust") in favor of Casey Lending, pledging the Property as collateral for the Promissory Note. Thomas also executed sworn documents authorizing the taxing authorities to transfer their tax liens to Casey Lending for tax years 2006 through 2013.

Casey Lending paid the delinquent taxes for tax years 2006 through 2013, and in October 2014, the taxing units transferred the tax liens corresponding to those tax years to Casey Lending.

In November 2014, the trial court rendered final judgment in favor of the taxing authorities in the 2013 Tax Suit.[2]

In July 2016, the same taxing authorities filed suit, this time to recover delinquent taxes for tax years 2014 to 2016 and to foreclose on tax liens levied against the Property to secure payment for those taxes ("2016 Tax Suit"). Casey

---

[2] The trial court conducted a trial on the merits in September 2014.

Lending intervened in the 2016 Tax Suit asserting its right under Section 33.445 of the Texas Tax Code to foreclosure on the delinquent tax liens it had acquired for tax years 2006 through 2013. The taxing authorities amended their petition naming as defendants Thomas, Allied Land Holding LLC (in rem only), and Smith (in rem only). Allied filed an original answer asserting it had purchased the Property at a foreclosure sale in September 2016.[3]

Smith filed an answer in the 2016 Tax Suit in June 2017. That same month, the trial court set the trial for August 11, 2017, and it issued notice of the trial setting to Smith at the address listed in her answer. According to Smith, she received notice of the August trial setting and although she "appeared at the [August] trial setting," the trial court postponed the proceeding "to obtain [its] own title search." Smith claims that at the conclusion of the August hearing, the trial court indicated there would be "another trial date, but [the court] did not specify when." Smith argues that she "left the courthouse [on August 11] believing []there would be additional proceedings," and she "would receive notice of a future trial date." Instead, on October 17, 2017, the trial court rendered a final judgment in the 2016 Tax Suit in

---

[3]     The foreclosure sale deed attached to Allied's answer reflects that on October 27, 2014, Thomas executed a note secured by a deed of trust to Casey Lending, and after Thomas defaulted on his payment obligations, Casey Lending foreclosed on the Property. Allied purchased the Property at a foreclosure sale in September 2016 for $2,257.77. The Tax Masters report in the 2016 Tax Suit reflects that Smith received a copy of the notice of the foreclosure sale, and Allied owned the Property as of July 25, 2017.

favor of the taxing authorities and Casey Lending, ordering that the Property be sold to satisfy the tax liens for years 2003 through 2016 ("2017 Judgment"). The 2017 Judgment states that Smith filed an answer, was "duly notified of trial," and "failed to appear in court" on August 11, 2017.

Pursuant to the 2017 Judgment, the district clerk issued an order of sale to Casey Lending and in July 2018, the constable conducted a tax sale at which Tai Phan purchased the Property for $92,000.[4]

Beginning in October 2018, Phan filed multiple eviction proceedings against Smith. On June 3, 2019, Phan obtained a judgment and order for possession of the Property.

**Bill of Review**

On June 12, 2019, Smith filed in the 2016 Tax Suit a combined "Bill of Review, Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction and Counterclaim and Third-Party Petition." In her bill of review, Smith argued that the 2017 Judgment had been rendered based on a series of official mistakes, including the failure to send her notice of the judgment and failure to provide her notice of additional proceedings after August 11, 2017, resulting in the denial of her right to due process. Smith requested that the trial court

---

[4] The proceeds from the sale were disbursed to Casey Lending, the tax master, the district clerk, and to others for costs and fees associated with the sale.

5

(1) declare the 2017 Judgment void as a matter of law with respect to her one-third interest in the Property, (2) "void the Constable's Sale and Deed" with respect to her interest in the Property, (3) "refund either all or 1/3 of the purchase price to Tai Phan," (4) "reinstate this tax cause," and (5) "find upon final judgment that Casey may not enforce its liens as to . . . her interests" in the Property. In addition to her bill of review, Smith asserted counterclaims against Casey Lending and third-party claims against Phan[5] for declaratory judgment, quiet title, and trespass to try title. She also filed applications for a temporary restraining order and for temporary and permanent injunctions against Phan and Casey Lending.[6]

Casey Lending objected to Smith's multifarious pleading. It argued that the trial court's plenary power over the 2016 Tax Suit had expired and thus the trial court lacked jurisdiction to consider anything other than Smith's bill of review. Casey also objected to Smith's bill of review and later filed a motion to strike the bill of review incorporating the arguments raised in its previously filed objections. The trial court conducted a hearing on the matter, and in December 2019, it denied

---

[5] Phan was not a party to the 2016 Tax Suit.

[6] On October 2, 2019, the trial court granted Smith's application for temporary injunction prohibiting Phan and Casey Lending from among other things, interfering with Smith's ownership, use, control, or disposition of the Property and "requesting the issuance of a writ of possession with regard to the [h]ome or petitioning any other for possession of the [h]ome."

Casey Lending's motion to strike stating the "motion was without merit."[7] Subsequently, the trial court set the case for trial for September 9, 2021.[8]

**Casey Lending's Motion for Summary Judgment**

In December 2020, Casey Lending filed a motion for summary judgment on its original foreclosure claim in the 2016 Tax Suit. Casey Lending argued it was entitled to summary judgment because (1) Smith's April 2014 deed from Mary Hope was invalid and could not "operate as a conveyance" and thus Smith lacked standing to challenge the foreclosure, and (2) Casey Lending's tax liens against the Property were valid and enforceable against the entire Property, including Smith's purported one-third undivided interest.

Casey Lending further argued that even if Smith's deed were valid, Casey Lending was nevertheless entitled to summary judgment as a matter of law because Smith's deed from Mary Hope expressly stated that Smith had taken her alleged one-third interest in the Property subject to pre-existing taxes, which included the tax liens then held by the taxing authorities for tax years 2006 through 2013, which Thomas authorized the taxing authorities to transfer to Casey Lending. Casey Lending argued that Thomas had the authority to contract with Casey Lending and

---

[7]     The transcript of the hearing is not in the appellate record.

[8]     The original trial setting is not in the clerk's record. The September 2021 trial setting is an "Order Resetting Trial."

authorize the taxing authorities to transfer the tax liens to Casey Lending pursuant to Section 32.06 of the Tax Code. *See* TEX. TAX CODE § 32.06. Casey Lending argued that because it had acquired the tax liens pursuant to Section 32.06, it was statutorily subrogated to the taxing units and thus it had the right to foreclose on the tax liens. Casey Lending further argued that even if Thomas could not have encumbered Smith's purported one-third interest in the Property, "the foreclosure sale to Tai Phan was valid as it pertained to [the] 2/3rd interest held by Thomas at the time of foreclosure."

Smith, who construed Casey Lending's motion for summary judgment as a motion on the first element of her bill of review—prima facie proof of a meritorious defense to Casey Lending's foreclosure claim—responded that Casey Lending was not entitled to summary judgment because, among other things, there were questions of material fact with respect to the second and third elements of her bill of review. Separately, on the merits, Smith argued she had standing to challenge Casey Lending's foreclosure on the Property because her deed from Mary Hope was valid and enforceable, and Section 32.06 of the Tax Code did not grant Thomas authority to encumber her one-third interest in the Property or authorize the taxing authorities to transfer the 2006 to 2013 tax liens to Casey Lending. Even if Casey Lending had a right to equitable subrogation of the tax liens, she argued there were questions of

material fact concerning the appropriateness of allowing Casey Lending to foreclose on her one-third interest in the Property based on subrogation.

Phan filed a response agreeing with most of Casey Lending's summary judgment arguments. Phan, however, disagreed with Casey Lending's position that if Thomas was not authorized to pledge Smith's one-third interest in the Property, the foreclosure sale to Phan was nevertheless valid with respect to the remaining two-thirds interest held by Thomas. Phan argued that if he was not vested with 100% interest in the Property, "the Tax Sale should be void, as it would not conform with the Judgment and Order of Sale."

The trial court held a non-evidentiary hearing on Casey Lending's motion for summary judgment and took the motion under advisement at the close of the hearing. Two months later, on August 16, 2021, the trial court issued an order granting Casey Lending's motion for summary judgment. The order states that after considering

> the [motion for summary judgment], the responses/replies filed by Wanda Joyce Smith and Tai Pan, the responses, replies and supplements filed thereto by Casey Lending, LLC, the evidence presented by the parties and the arguments made by the parties, the Court GRANTS the Motion and ORDERS all claims brought by Wanda Joyce Smith against Casey Lending, LLC in the document filed on June 12, 2019 and titled IN REM DEFENDANT WANDA JOYCE SMITH'S BILL OF REVIEW, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION AND COUNTERCLAIM AND THIRD-PARTY PETITION or in any pleadings filed thereafter, DISMISSED WITH PREJUDICE. This order grants partial summary judgment to the extent there are claims remaining, relating to other

9

parties to this suit, that do not implicate Casey Lending, LLC. This is a final and appealable order that is effective immediately.[9]

Smith appealed, but this court determined that the judgment was not final because Smith had asserted claims against Tai Phan, who had not moved for summary judgment, and thus the judgment did not resolve all claims against all parties.

### Phan's Motion for Summary Judgment

On remand, Phan moved for summary judgment on Smith's third-party claims for suit to quiet title, trespass to try title, declaratory judgment, and request for permanent injunction enjoining him from interfering with Smith's alleged ownership of the Property. Phan incorporated by reference Casey Lending's motion for summary judgment and argued that in addition to the arguments raised in that motion, Phan was entitled to summary judgment on Smith's claims against him because Smith had not tendered payment of the amount he paid for the Property or

---

[9] Although not expressly stated, the judgment in this case disposing of the merits of the underlying case effectively set aside the 2017 Judgment and substituted a new judgment in its place in favor of Casey Lending. *Cf. Burki v. Dansby*, No. 01-22-00044-CV, 2023 WL 3235821, at *4 (Tex. App.—Houston [1st Dist.] May 4, 2023, pet. denied) (mem. op.) ("In a bill-of-review proceeding, the merits of the underlying case are reached only if the petition for bill of review is granted."); *see also Alaimo v. U.S. Bank Tr. Nat'l Ass'n*, 551 S.W.3d 212, 214–16 (Tex. App.—Fort Worth 2017, no pet.) (stating "final judgment in a bill of review should either: (1) deny any relief to the bill-of-review petitioner, or (2) 'grant the bill of review and set aside the former judgment, insofar as it is attacked, and substitute a new judgment which properly adjudicates the entire controversy.'") (quoting *In re J.B.A.*, 127 S.W.3d 850, 851 (Tex. App.—Fort Worth 2004, no pet.)).

10

deposited into the registry of the court the amount required by Section 34.08 of the Tax Code to commence her suit to challenge the validity of a tax sale. According to Phan, compliance with Section 34.08's requirement to "deposit[] into the registry of the court an amount equal to the amount of the delinquent taxes, penalties, and interest specified in the judgment of foreclosure obtained against the property plus all costs of the tax sale" is a prerequisite to commencing an action challenging the validity of a tax sale, and even if Smith were in the future to deposit the required funds or file an affidavit of inability to pay, Smith "would be barred by the limitations period of section 33.54." Phan also filed a motion to vacate the temporary injunction previously issued by the trial court enjoining Phan from, among other things, taking any action that could affect Smith's property rights.

Smith filed a combined motion to set aside the order granting Casey Lending's motion for summary judgment, response to Phan's motion for summary judgment, and response to Phan's motion to vacate the temporary injunction. In the portion of her multifarious pleading moving to set aside the order granting Casey Lending's motion for summary judgment, Smith argued for the first time that Thomas had not complied with Chapter 65 of the Texas Property Code, and he was thus prohibited from encumbering or pledging her one-third interest in the Property. Smith also argued that the trial court's order granting summary judgment for Casey Lending was "procedurally premature" because she had pleaded and established that she had

11

not received notice of the proceedings resulting in the 2017 Judgment or notice of the judgment until April 2018. Consequently, she was not required to establish a meritorious defense to proceed to trial on the merits of her bill of review. Smith also reasserted some of the arguments she raised in response to Casey Lending's motion for summary judgment, such as the existence of issues of material fact, the validity of her deed from Mary Hope, Thomas' ability to encumber her one-third interest in the Property, and the availability of equitable subrogation.

With respect to Phan, Smith argued he was not entitled to summary judgment based on the argument that her claims were barred by the statute of limitations or her alleged failure to comply with Tax Code Section 34.08 because Phan had not pleaded either affirmative defense. According to Smith, she was not required to comply with Tax Code Section 34.08 before filing her third-party claims against Phan because she was not seeking "to attack the foreclosure sale under Chapter 34 of the Tax Code." And even assuming there was a common law claim concerning the validity of the tax sale, she argued "any kind of action challenging the sale may toll the statute of limitations even if filed in the incorrect court."

The trial court granted Phan's summary judgment motion and dismissed Smith's remaining claims with prejudice.

This appeal followed.

**DISCUSSION**

In her first issue, Smith argues the trial court erred in granting Casey Lending's motion for summary judgment on her bill of review because she proved she was not provided notice of the dispositive hearing that resulted in the 2017 Judgment. Thus, she argues, she was not required to establish a meritorious defense to prevail on her bill of review. According to Smith, she was not required to prove her defense until a trial on the merits. And because Casey Lending did not move for summary judgment on the other two elements of her bill of review, the trial court could not have granted summary judgment on either ground.

**A.   Bill of Review**

A bill of review is an equitable proceeding to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or direct appeal. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004). It is a separate and independent suit, brought in the same court that entered the challenged judgment but under a different cause number. *See In re Thompson*, 569 S.W.3d 169, 173–74 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

To set aside a judgment by bill of review, the petitioner must plead and prove that (1) she has a meritorious defense to the cause of action alleged to support the judgment, (2) that she was prevented from making by the fraud, accident, or

wrongful act of her opponent, (3) unmixed with any fault or negligence of her own. *King Ranch, Inc.*, 118 S.W.3d at 751–52; *Caldwell*, 154 S.W.3d at 96. If the petitioner alleges that the challenged judgment was rendered without service of process or notice of the dispositive trial setting resulting in the final judgment, she is relieved from establishing the first two elements of the bill of review. *See Caldwell*, 154 S.W.3d at 96–97 (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 85 (1988)). The petitioner must still prove the third element, however: that "judgment was rendered unmixed with any fault or negligence" on her part. *See Caldwell*, 154 S.W.3d at 97. But the third element is conclusively established if the petitioner proves she was not served with process or notice of a dispositive trial setting. *Id.*; *see also Jaramillo v. Meadows*, 695 S.W.3d 892, 898 (Tex App.— Houston [1st Dist.] 2024, no pet.).

Courts generally employ a two-step inquiry when ruling on a bill of review. *Baker v. Goldsmith*, 582 S.W.2d 404, 408–09 (Tex. 1979); *see also Ramsey v. State*, 249 S.W.3d 568, 576 (Tex. App.—Waco 2008, no pet.) ("The *Baker* pretrial hearing is a 'suggested procedure' which a trial court may choose not to employ."). The court first determines as a pretrial matter whether the petitioner presented prima facie proof supporting her bill of review. *Beck v. Beck*, 771 S.W.2d 141, 141–42 (Tex. 1989); *Baker*, 582 S.W.2d at 408–09. If she did not, the court will deny the bill of review and dismiss the case. *Beck*, 771 S.W.2d at 142; *Baker*, 582 S.W.2d at 409. If,

14

however, the petitioner establishes the requisite prima facie proof, the court will grant the bill of review and proceed with a trial on the merits. *Beck*, 771 S.W.2d at 142; *Baker*, 582 S.W.2d at 409.[10] When a petitioner seeks a bill of review based solely on a claim of lack of notice, the trial court employs a slightly different procedure. The trial court (1) dispenses with any pretrial inquiry into a meritorious defense, (2) holds a trial, at which the petitioner assumes the burden of proof to establish she was not given notice of the dispositive trial setting, and (3) conditioned upon an affirmative finding that the petitioner did not receive notice, allows the parties to revert to their original status as plaintiff and defendant with the burden on the original plaintiff to prove her case. *Caldwell*, 154 S.W.3d at 97–98.

## B. Casey Lending Moved for Summary Judgment on its Foreclosure Claim

Contrary to Smith's position, the record reflects that Casey Lending did not move for summary judgment on Smith's bill of review. Rather, Casey Lending moved for summary judgment on its foreclosure claim. Casey Lending argued in its motion for summary judgment and during the hearing on its motion that even if Smith had met the requirements for a bill of review, Casey Lending would prevail at trial on its foreclosure claim because, as a matter of law, Thomas had authority to

---

[10] It is not necessary, despite this two-step inquiry, for the trial court to conduct a separate hearing to determine whether the petitioner presented prima facie proof of her bill of review. *See Boateng v. Trailblazer Health Enters., L.L.C.*, 171 S.W.3d 481, 488 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Ortmann v. Ortmann*, 999 S.W.2d 85, 88 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

authorize the taxing authorities to transfer the tax liens on the Property to Casey Lending, including the portions of the liens for Smith's purported one-third undivided interest in the Property.[11]

The record reflects that several months before filing its motion for summary judgment, Casey Lending filed objections to Smith's bill of review and moved to strike the pleading. Casey Lending argued that Smith was not entitled to relief because she had not alleged she had been prevented from raising a meritorious defense to Casey Lending's foreclosure claim based on fraud, accident, or the wrongful act of an opposing party, and although she alleged she had not received timely notice of the 2017 Judgment as a result of an "official mistake," she was not relieved from having to prove a meritorious defense because the trial court had not rendered a default judgment against Smith. Casey Lending argued that Smith had received notice of and participated in the August 11, 2017 trial setting, and although she argued she had not received notice of the 2017 Judgment until six months later, Smith waited an additional fourteen months to file her bill of review and offered no explanation for the considerable delay.

---

[11]    Smith argues that the trial court was not considering the merits of her bill of review at the hearing on Casey Lending's motion for summary judgment and thus the trial court did not hear the bill of review and summary judgment together. She argues she did not consent to them being heard together.

Smith responded that Casey Lending's motion to strike her pleadings should be denied because "no rule of procedure . . . provide[d] that pleadings be struck under the [present] circumstances." According to Smith, Casey Lending was "merely repeating arguments made at the hearing on July, 1, 2019" on her application for a temporary injunction against Phan and Casey Lending and the trial court had granted the temporary injunction. Smith argued that the evidence presented at the hearing demonstrated that although Thomas knew she had acquired an interest in the property from Mary Hope, Thomas had nonetheless signed a property tax loan agreement with Casey Lending without Smith's knowledge and she did not have notice of the loan. According to Smith, the evidence demonstrated that Casey Lending had "obtained judgment []without [her] having received any notice of trial, and an impending final adjudication of the case," that Smith had not "received notice of the judgment [until] after the time for appeal had passed," and that "neither Casey, nor any other party ha[d] adduced any evidence that it [had] sent or that she received such notice."

Citing to Tax Code Section 32.06, Smith argued that Thomas lacked the authority to encumber her one-third undivided interest in the Property or authorize the taxing authorities to transfer the 2006 to 2013 tax liens to Casey Lending. She also argued that Casey Lending did not have a right to equitable subrogation of the tax liens and even if it did, there were questions of material fact concerning the

17

appropriateness of allowing Casey Lending to foreclose on her one-third undivided interest in the Property based on subrogation.

In December 2019, after conducting a hearing on the matter, the trial court denied Casey Lending's motion to strike stating the "motion was without merit."[12] The trial court then set the case for trial for September 9, 2021. It thus appears from the record that at some point before Casey Lending filed its motion for summary judgment, the trial court granted Smith's bill of review and proceeded to consider Casey Lending's foreclosure claim on the merits. *See Burki v. Dansby*, No. 01-22-00044-CV, 2023 WL 3235821, at *4 (Tex. App.—Houston [1st Dist.] May 4, 2023, pet. denied) (mem. op.) ("In a bill-of-review proceeding, the merits of the underlying case are reached only if the petition for bill of review is granted."). Indeed, the transcript of the hearing on Casey Lending's motion for summary judgment reflects that the trial court considered Casey Lending's motion for summary judgment as if the bill of review had been granted and the parties had reverted to their original status as intervening plaintiff (Casey Lending) and defendant (Smith), and thus Casey Lending bore the burden to prove its case on its foreclosure claim as the plaintiff. At the beginning of the summary judgment hearing, the trial court stated:

> We are on the record now in Case No. 2016-49408. We're here on Casey Lending's motion for summary judgment. Casey Lending is an

---

[12] The transcript of the hearing is not in the appellate record.

18

intervening plaintiff or counter defendant, but *for purposes of this motion [Casey Lending] is an intervening plaintiff.*

Would also—there have been two responses filed in response to the motion for summary judgment one on behalf of Tai Phan, who's a third party defendant. *And then Ms. Wanda Joyce Smith, who in this capacity is a defendant.*

. . .

So, Mr. Schultz [Casey Lending's counsel], you're the movant. You can sort of set up your motions to the extent you need to. Again, I kind of want to streamline things. I know that there's kind of an extensive procedural history, and I—I remember much of it.

So if you can sort of point me to exactly why you believe you're entitled to summary judgment. And then I'll allow a response on behalf of the parties.

(Emphasis added.) Casey Lending argued that its motion for summary judgment was not untimely or premature. It argued that the trial court had previously denied its objection to Smith's bill of review arguably on a finding of lack of due process, and thus it could now move for summary judgment on the merits of its claim:

Like the same reasons—for the same reasons why a summary judgment motion is appropriate in a regular case to avoid a lot of unnecessary judicial process. It's appropriate right now.

And I'm just saying if we—if we look past—*I understand the Court has denied my objection to the bill of review*, I think quite awhile ago at this point, many months ago. That if the real issue at that point, that the heart of that decision to deny was that there was a due process violation, which I totally understand, then it is—it does make sense to at this point address what happens next.

Casey Lending then argued that it was entitled to summary judgment at this point on its foreclosure claim because Smith's argument that Casey Lending's liens were

19

invalid was incorrect as a matter of law. The trial court ultimately granted summary judgment in favor of Casey Lending, and in doing so, it ruled on the merits of its underlying claim.[13] *See id.* (stating merits of claim are reached only if petition for bill of review granted).

### Summary Judgment in Favor of Casey Lending

In its motion for summary judgment Casey Lending argued it was entitled to summary judgment on its foreclosure claim because (1) Smith's April 2014 deed from Mary Hope was invalid and could not "operate as a conveyance" and thus Smith lacked standing to challenge the foreclosure, and (2) Casey Lending's tax liens against the Property were valid and enforceable against the entire Property, including Smith's purported one-third undivided interest.

We review a trial court's order granting summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. If the movant satisfies its initial burden on the issues expressly presented in the motion, the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary

---

[13]     Smith does not explicitly argue that the trial court erred in ruling on her bill of review. Rather, her argument is that the trial court erred in granting Casey Lending's motion for summary judgment.

20

judgment. *See Lujan*, 555 S.W.3d at 84. A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on those grounds alone. *Espalin v. Children's Med. Ctr. Of Dallas*, 27 S.W.3d 675, 688 (Tex. App.—Dallas 2000, no pet.). When the summary judgment order does not state the grounds upon which it is based, the party challenging the order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.).

## A.  Validity of Smith's Deed

Casey Lending argued that Smith's deed from Mary Hope was invalid and therefore Smith lacked standing to challenge the foreclosure. According to Casey Lending, Smith's deed does not legally describe the Property and thus "cannot operate as a conveyance" of the Property because it contains a general description of the Property, rather than a metes-and-bounds description, and the legal description includes the wrong street address. Casey Lending argued that when considered as a whole, the deed is ambiguous because the property description "conflicts with itself; its subject and predicate appear to describe different land." It further contended that the ambiguous property description and the deed conveying Mary Hope's one-third undivided interest in the Property to Thomas suggest that Mary Hope did not intend to convey her interest in the Property to Smith when she executed the deed to Smith.

21

## 1. Elements of Valid Conveyance

A valid conveyance of an interest in land "must satisfy the requirements of both the statute of conveyances, Property Code section 5.021, and the statute of frauds, Business and Commerce Code section 26.001." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.). To be legally effective, a deed generally must contain the following elements: (1) the instrument of conveyance is in writing; (2) the instrument sufficiently describes the interest to be conveyed; (3) the grantor and grantee can be ascertained from the instrument as a whole; (4) the instrument contains operative words or words of grant showing the grantor's intention to convey title to an interest in real property to the grantee; (5) the instrument is properly signed and acknowledged by the grantor; and (6) the instrument is delivered to and, if necessary, accepted by the grantee. *ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 531–32 (Tex. 2024).

When a deed is unambiguous, an appellate court construes the deed as a matter of law. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). Whether a deed is ambiguous is a question of law for the court. *See id.*; *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A deed is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Koopmann*, 547 S.W.3d at 874. In construing a deed, we must ascertain and give effect to the parties' intentions as expressed in the writing itself.

*See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012). If the deed is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the deed is ambiguous, thus creating a fact issue on the parties' intent. *Heritage Res., Inc.*, 939 S.W.2d at 121.

## 2. Analysis

Smith's deed identifies the property being conveyed as "real estate, situated at 12230 Fairpoint Dr, Houston, in the County of Alief, State of Texas" and states that the property's "legal description" is "1223 Fairpoint DR LT 1 BLK 3 HUNTINGTON VILLAGE SEC 1" followed by the interlineation, "Harris County." The deed further states:

> Subject to existing taxes, assessments, liens, rights of way and easements of record the grantor [Mary Hope] hereby covenants with the Grantee(s) [Smith] that Grantor [Mary Hope] is lawfully seized of the above granted premises and has good right to sell and convey the same.

Casey Lending argues without elaboration that the deed is ambiguous because the deed's property description "conflicts with itself; its subject and predicate appear to describe different land."[14] Although the deed incorrectly states that the Property

---

[14] Casey Lending argues that the deed's ambiguous description of the subject property "renders [Smith's deed] meaningless and ineffective." On the contrary, an ambiguous deed presents a question of fact for the factfinder and rendering summary judgment is inappropriate. *See Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 599 (Tex. App.—Eastland 2005, no pet.) (stating if written instrument remains reasonably susceptible to more than one meaning after established rules of

23

is located in "Alief" County, as opposed to Harris County, and in one instance it misstates the Property's street address as "1223 Fairpoint DR," the remainder of the deed unambiguously reflects that the subject property is located at 12230 Fairpoint Dr, Houston, Harris County, Texas and the legal description of the property is "LT 1 BLK 3 HUNTINGTON VILLAGE SEC 1" in Harris County, Texas.[15] *See Koopmann*, 547 S.W.3d at 874 (stating deed is ambiguous when its meaning is uncertain and doubtful or reasonably susceptible to more than one interpretation and whether deed is ambiguous is question of law for court); *see also Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 745 n.12 (Tex. 2020) ("When part of a deed's property description is incorrect, we will disregard that part 'as surplusage' and enforce the deed if the remainder of the description identifies the land with sufficient certainty.") (citing *Reserve Petroleum Co. v. Harp*, 148 Tex. 448, 226 S.W.2d 839, 841 (1950)). The deed thus contains accurate information sufficient to allow someone "familiar with the locality to identify the premises with reasonable certainty." *See Buckingham v. McAfee*, 393 S.W.3d 372, 376 (Tex. App.—Amarillo 2012, pet. denied) (stating "a valid conveyance requires a description (of the property being conveyed)

---

interpretation have been applied, then instrument is ambiguous, and extrinsic evidence is admissible to determine its true meaning).

[15] According to Casey Lending, the correct address is 12230 Fairpoint Drive, Houston, Harris County, Texas 77099 and the property is accurately described as "Lot One (1) in Block Three (3) of Huntington Village, Section One (1), an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 180, Page 11 of the Map Records of Harris County, Texas."

sufficient to allow a party familiar with the locality to identify the premises with reasonable certainty").

After adequately describing the Property, the deed states that Mary Hope "hereby covenants with [Smith] that [Mary Hope] is lawfully seized of the above granted premises and has good right to sell and convey the same." When considered as a whole, the deed unambiguously reflects that Mary Hope intended to convey her one-third undivided interest in the Property to Smith when she executed the deed to Smith. *See Hahn*, 704 S.W.3d at 531–32 (stating legally effective deed must contain operative words or words of grant showing grantor's intention to convey title to interest in real property to grantee); *El Paso Field Servs.*, 389 S.W.3d at 805 (stating courts ascertain and give effect to parties' intentions as expressed in writing itself).

Casey Lending argues that the deed conveying Mary Hope's one-third undivided interest in the Property to Thomas demonstrates that Mary Hope did not intend to convey her interest in the Property to Smith when she executed the deed to Smith. Because Smith's deed is unambiguous with respect to Mary Hope's intent to convey her interest in the Property to Smith, we cannot consider the deed from Mary to Thomas. *See Hughes v. CJM Res., LP*, 640 S.W.3d 623, 628 (Tex. App.—Eastland 2022, no pet.) ("In general, absent ambiguity, fraud, accident, or mistake, courts will not consider extrinsic evidence in construing the intentions of the parties to the deed."); *see also Wright v. Jones*, 674 S.W.3d 704, 713 (Tex. App.—Waco

2023, no pet.) (stating "extrinsic evidence of intent is admissible only if the deed is ambiguous on its face").

Smith's deed unambiguously describes the interest being conveyed from Mary Hope to Smith and reflects Mary Hope's intention to convey her one-third undivided interest in the Property to Smith. *See Hahn*, 704 S.W.3d at 531–32 (stating legally effective deed sufficiently describes interest being conveyed and reflects grantor's intention to convey title to interest in real property to grantee).[16] Because Smith's deed is legally effective, Smith has a cognizable interest in the Property and thus standing to challenge Casey Lending's foreclosure on the Property. Casey Lending was thus not entitled to summary judgment on this ground. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) ("[W]hen[, as here, a] third party has a property interest, whether legal or equitable, that will be affected by [a foreclosure] sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale.").

## B.    Tax Code Section 32.06

Casey Lending also argued it was entitled to judgment as a matter of law on its foreclosure claim because it had properly acquired the tax liens levied against the entire Property for tax years 2006-2013 pursuant to Section 32.06 of the Tax Code

---

[16]    Casey Lending does not dispute that Smith's deed meets the other requirements for an effective deed. *See ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 531–32 (Tex. 2024).

and, as a transferee under that statute, Casey Lending was subrogated to the taxing authorities' right to foreclose on the tax liens. According to Casey Lending, even if Smith has a one-third undivided interest in the Property, Smith's deed from Mary Hope expressly stated that Smith had taken her interest in the Property subject to pre-existing taxes, which included the tax liens then held by the taxing authorities for tax years 2006 through 2013, which Thomas authorized the taxing authorities to transfer to Casey Lending, and, as a co-tenant, Thomas "had the power to unilaterally authorize a tax lien transfer encumbering the entire property" pursuant to Section 32.06.

Smith argues that the plain language of Section 32.06 requires that when there are multiple owners of the same property, all owners must consent to the tax lender's payment of the taxes levied against the property and the transfer of the liens securing payment of the taxes to the tax lender. According to Smith, she was not aware that Thomas had executed the Promissory Note in favor of Casey Lending and a deed of trust pledging the entire Property as collateral for the Promissory Note. She argued she had not authorized Casey Lending to pay the delinquent taxes for tax years 2006-2013 and the taxing authorities to transfer the liens securing payment of those taxes to Casey Lending, and she did not authorize Thomas to act on her behalf and encumber or pledge her interest in the Property.

The primary issue presented in Casey Lending's motion for summary judgment and on appeal is whether Thomas, acting individually, could authorize Casey Lending to pay the delinquent taxes levied against the entire Property and authorize the taxing authorities to transfer the tax liens to Casey Lending pursuant to Section 32.06 without Smith's consent.

In its motion for summary judgment and its appellate briefing, Casey Lending relies primarily on *In re Morales*, 520 B.R. 544 (W.D. Tex. 2014), which Casey Lending argues "holds that only one of several property owners can authorize the transfer of preexisting tax liens from taxing units to a tax lender." Casey Lending's reliance on *In re Morales* is misplaced. In *In re Morales*, the borrower and her six siblings each inherited a one-seventh interest in real property. *See* 520 B.R. at 546. The borrower subsequently executed a promissory note and executed a tax lien contract with Sombrero Capital, LLC, presumably pursuant to Section 32.06, and signed an affidavit as the property's owner authorizing the taxing authority to transfer the tax lien to Sombrero. *Id.* at 546–47. The other six siblings, who were not parties to the loan, argued that Sombrero's tax lien could not attach to their interest in the property because they had not authorized the taxing authority to transfer the lien to Sombrero. *Id.* at 547. On appeal, Ovation Services, Sombrero's servicer, argued that "under the Texas Tax Code, when [the borrower] signed the promissory note, deed of trust, and tax lien contract, she encumbered the entire commercial lot

with the tax lien and deed of trust" and that the borrower "had the requisite authority on behalf of all of the undivided interests in the commercial lot to encumber the entire property on her own." *Id.*

Citing to Sections 32.05 and 32.07(b) of the Tax Code, the court in *In re Morales* stated that ad valorem property taxes in Texas have first lien priority on real property and "the person in whose name a property is required to be listed is personally liable for the taxes imposed on the property." *Id.* at 549 (citing TEX. TAX CODE § § 32.05 and 32.07(b)). The court further stated:

> Any property owner, or combination of property owners, may borrow funds from a lender to pay off delinquent property taxes. *See* Tex. Tax Code § 32.065(a) (West 2013) ("Section 32.06 does not abridge the right of a property owner to enter into a contract for the payment of taxes.").

*Id.* The opinion neither cites to Section 32.06 nor analyzes the statute. The court goes on to say that whether the borrower "could encumber the remaining 6/7th undivided interests of her other siblings" was not "the determinative question," and concluded that "the issue is determined by whether Ovation's deed of trust and transfer of tax lien was subrogated to the ad valorem tax lien of Guadalupe County." *Id.* at 550.

After discussing Texas Supreme Court and Fifth Circuit Court of Appeals' opinions addressing equitable and contractual subrogation, the court in *In re Morales* held:

> Sombrero properly perfected its lien interest. In doing so, it took the lien position of Guadalupe County, including all rights and remedies

> afforded the taxing authority. Therefore, Sombrero also took a security
> interest as to the entire commercial lot.

*Id.* at 552; *id.* at 551–52 (discussing *Benchmark Bank v. Crowder*, 919 S.W.2d 657

(Tex. 1996), *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616 (Tex. 2007), and

*Vogel v. Veneman*, 276 F.3d 729, 734 (5th Cir. 2002)). The holding in *In re Morales*

is thus based on the common law principles of equitable and contractual subrogation,

not on a lienholder's right to statutory subrogation pursuant to Section 32.06. *See In

re Morales*, 520 B.R. at 550–52 (discussing Texas and federal court opinions

addressing equitable and contractual subrogation). We thus find the federal

bankruptcy court's opinion in *In re Morales* to be neither binding nor persuasive.

*See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While

Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any

other federal or state court . . . they are *obligated* to follow only higher Texas courts

and the United States Supreme Court.") (emphasis in original).

Similarly, Casey Lending's reliance on *Benchmark Bank* and *LaSalle Bank*

and other Texas court opinions for the proposition that Texas common law allows a

co-tenant to take out a loan to protect the entire property from foreclosure is

unavailing because these opinions involve claims of equitable and contractual

subrogation, not statutory subrogation under Section 32.06. Although Casey

Lending asserts that it is entitled to equitable subrogation, as well as statutory

subrogation under Section 32.06, Casey Lending moved for summary judgment based solely on its claim of statutory subrogation under Section 32.06.

After appellate briefing was completed, Casey Lending filed in this court a letter of supplemental authority asserting that the Amarillo Court of Appeals had issued a memorandum opinion in *Runels v. Tax Loans USA, Ltd.*, No. 07-22-00130-CV, 2023 WL 5488438 (Tex. App.—Amarillo Aug. 24, 2023, pet. denied) (mem. op.) ("*Runels I*") that interpreted Section 32.06 to "provide that if more than one person owns the property at issue, [] fewer than all of them are free to contract for the transfer of a tax lien to a creditor who provides funds for the payment of property taxes." Casey Lending argued that *Runels I* was directly on point.

In that case, Runels and his siblings inherited real property that "was encumbered by a tax lien, which attached upon the failure to pay the requisite taxes for various years preceding 2014." *Id.* at *1. Tony, Runels' brother, "obtained a loan from [Tax Loans USA] to pay the delinquent debt and executed the requisite documents to permit it to acquire the tax lien" from the taxing authority pursuant to Tax Code Section 32.06. *Id.* After Tony defaulted on the loan, Tax Loans USA sued to adjudicate the debt owed and foreclose upon the transferred tax lien.[17] *Id.* Runels

---

17      The taxing authority intervened in the case to "foreclose upon the tax lien attributable to non-payment of the 2015 through 2018 ad valorem taxes." *Runels v. Tax Loans USA, Ltd.*, No. 07-22-00130-CV, 2023 WL 5488438, at *1 (Tex. App.—Amarillo Aug. 24, 2023, pet. denied) (mem. op.). The taxing authority moved for

31

and Tax Loans USA filed competing motions for summary judgment and the trial court granted Tax Loans USA's motion and denied Runels' motion as moot. *Id.*

On appeal, Runels argued that the trial court had erred in granting Tax Loans USA's motion for summary judgment because Section 32.06 of the Tax Code "does not permit fewer than all owners of the property in question to comply with its terms," and because Runels did not contract with Tax Loans USA pursuant to 32.06, Tax Loans USA "could not acquire the tax lien upon which it endeavored to foreclose." *Id.* According to Runels, Section 32.06 "does not permit fewer than all owners of a particular parcel from completing the steps necessary to afford a lender the opportunity to acquire the tax lien." *Id.* at *2.

> Applying the rules of statutory construction, *Runels I* stated:
>
> With those rules in mind, we see that the provision begins with the phrase "a property owner may authorize . . .". It does not say "the property owners," "all property owners," "the property owner or owners," "the class or group of property owners," "every property owner," or the like. Instead, it says, "a property owner." The common meaning of "a" followed by a noun denotes singularity, that is, one. We see no ambiguity in the language. Nor do we find it unclear or our interpretation absurd. Indeed, the entire process likens to a statutory equivalent of equitable subrogation where one paying the debt of another stands in the shoes of the creditor. *See Frymire Eng. Co. v. Jomar Int. Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) (stating that equitable subrogation allows a party who has paid a debt for another to step into the shoes and pursue the claims of the payment's recipient). That is, in effect, what the statute permits. Moreover, the individual property owner is not creating some new encumbrance or lien on the entire

---

summary judgment, and *Runels I* affirmed the trial court's granting of the motion. *See id.* at *4.

property. Rather, the lien already exists in favor of the taxing unit due to the non-payment of taxes, not because of the owner's invocation of § 32.06.

Thus, we interpret the statute as saying that if more than one person owns the property, fewer than all are free to pursue the § 32.06(a-1) avenue. And, the taxing unit remains free to transfer any existing tax lien to the creditor who provided the needed funds. *See* § 32.06(a-2) (stating that "[e]xcept as provided by Subsection (a-8), a tax lien may be transferred to the person who pays the taxes on behalf of the property owner . . . for: (1) taxes that are delinquent at the time of payment; or (2) taxes that are due but not delinquent at the time of payment . . .").

*Id.* at *2. *Runels I,* however, found there was a material issue of fact regarding the amount Tax Loan USA was entitled to recover through the foreclosure of the lien, reversed the trial court's granting of summary judgment in Tax Loans USA's favor, and remanded to the trial court for further proceedings. *Id.* at *3–4.

On remand to the trial court, Runels and Tax Loans USA filed new, competing motions for summary judgment on Tax Loans USA's foreclosure claim, the court granted Tax Loan USA's motion, and Runels appealed. *See Runels v. Tax Loans USA, LTD*, No. 07-24-00246-CV, 2024 WL 4994307 (Tex. App.—Amarillo, Dec. 5, 2024, no pet.) (mem. op.) ("*Runels II*"). In *Runels II*, Runels argued that the loan agreement between Tony and Tax Loan USA was "illegal to the extent it purported to give [Tax Loans USA] the right to acquire from and enforce" the transferred tax lien because all the property owners are not parties to the agreement. *See id.* at *1. The court stated that this was "the very argument [the court] addressed and rejected" in *Runels I* and that the doctrine of "law of the case" ordinarily binds a court of

33

appeals to "its initial decision in a subsequent appeal involving the same case." *Runels II*, 2024 WL 4994307 at *1–2. The law of the case doctrine, however, is not absolute and a court may exercise its discretion and reconsider its prior opinion "when the earlier decision was clearly wrong." *Id.* at *2 (citing *Davis v. Highland Coryell Ranch, LLC*, 578 S.W.3d 242, 244 (Tex. App.—Amarillo June 18, 2019, pet. denied)). According to the court, Runels implicitly invoked this exception to the law of the case doctrine by arguing that *Runels I*'s holding was contradicted by newly cited authority, *Mahan v. Lehman*, No. 03-00-00382-CV, 2001 WL 252075 (Tex. App.—Austin 2001, no writ). After discussing *Mahan*, the court concluded that while "the actual holding in *Mahan* is inapposite to our case," the "authority and dicta mentioned by the *Mahan* court are of interest," and the "authority of interest is [the opinion in *Trimble v. Farmer*, 305 S.W.2d 157 (Tex. 1957)] to which *Mahan* alluded." *Runels II*, 2024 WL 4994307, at *2.

In *Trimble*, Lucy owned an undivided nine-tenths interest in a parcel of property and the remaining one-tenth was owned by Effie. *Trimble*, 305 S.W.2d at 159. After the taxing authorities threatened to foreclosure on the property, Lucy arranged for Farmer to pay the delinquent taxes due on the property and in exchange, Lucy would request that the taxing authorities assign their tax liens against the property to Farmer pursuant to Section 32.06's predecessor, Article 7345a, Vernon's Annotated Texas Civil Statutes. *Id.* at 159. Farmer sued Lucy's estate to enforce the

34

transferred tax lien and foreclose on the property and Effie intervened in the suit. *Id.* at 158. After a bench trial, the court rendered judgment in Farmer's favor and ordered the property to be sold. *See id.* at 159. On appeal, Effie argued that the trial court erred in ordering her one-tenth interest in the property to be sold to pay off the tax lien because Lucy had no right to encumber Effie's one-tenth interest with a tax lien. *See id.* at 160–61. Article 7345a, which "sets out a method whereby one paying taxes due against property may receive a transfer of the tax lien against the property," "specifically requires that for a disinterested third party to acquire the tax lien against any property by the payment of taxes thereon, such third party must deliver to the proper taxing official, authorized to collect the taxes, a request of 'the owner of said property'" and "further provides that the tax lien may be transferred under the conditions set out in Art. 7345a, 'and not otherwise.'" *Id.* at 161. The court held that Lucy could not encumber or convey Effie's one-tenth interest in the property, because Lucy "was not an 'owner' of such one-tenth interest so that she could request the taxing authorities to transfer the tax lien" to Farmer. According to *Trimble,* Farmer did not have a lien on Effie's one-tenth interest because Effie did not request a transfer of the tax lien on her one-tenth interest to Farmer. *Id.* at 161. Instead, Farmer "has *a valid and enforceable lien upon the nine-tenths interest in the property owned by Lucy . . . ."* *Id.* at 162 (emphasis added). "It is only this nine-tenths interest which may be sold for the payment of the amount paid." *Id.* According

35

to *Runels II*, *Trimble* held that "neither the entire tax lien [held by Farmer] nor [the] ensuing foreclosure upon same were invalidated, but only the proportion equating the percentage of property unowned by the tax debtor," Effie. *Runels II*, 2024 WL 4994307, at *3.

Relying on *Trimble*, *Runels II* held that Tony was able to "invoke the provisions of § 32.06 of the Tax Code and arrange for [Tax Loans USA] to satisfy the tax lien encumbering [only Tony's] ownership interest" and thus Tax Loans USA "could acquire and enforce the tax lien to the extent of Tony's undivided interest." *Id*. The court concluded that its holding was consistent with its decision in *Runels I* because in *Runels I*, "Runels asserted that the *entire* lien was unenforceable or void because all the landowners had not joined in Tony's agreement" with Tax Loans USA, and because *Runels I* was an appeal from a summary judgment, the court was limited to the grounds mentioned within the motion. *Id.* The court further stated:

> In short, Runels' complaint about Tony's contract with USA being illegal in its entirety is baseless. Tony could contract with USA, as he did. What neither Tony nor USA could do is utilize that contract and assignment as a means of divesting co-owners of the property of their interests if they were strangers to the arrangement.

*Id.*.

In a second supplemental letter of authority, Casey Lending argues that *Runels II*'s interpretation of Section 32.06 is erroneous because it renders Texas Tax Code Section 33.46 superfluous. Casey Lending argues that under the Tax Code, a tax lien

36

attaches to the entire property, not just the undivided interest of the property owner who authorizes the payment of delinquent property taxes by a third party, and Section 33.46 of the Tax Code provides a remedy for a co-tenant seeking to avoid the lien created by a co-owner—partition. Section 33.46 states that if a suit is filed to foreclose on a tax lien levied against real property that is owned in undivided interests by two or more persons, any affected owners may have the property partitioned, resulting in an apportionment of the taxes, and related costs and expenses to the owners of the property in proportion to the interest of each. *See* TEX. TAX CODE § 33.46(a)-(b). If an owner then pays the taxes and related costs and expenses apportioned to him, the partitioned property is then free from further claim or lien for the taxes involved in the suit. *Id*. § 33.46(b). However, if the owner refuses to pay the property tax amount apportioned to him, the suit shall proceed against him for that amount. *Id*.

Casey argues that "by limiting a tax lien to only the interest of the co-owner authorizing the loan," *Runels II* "renders Section 33.46(b) superfluous." We disagree that *Runels II's* holding that a property owner can only authorize a taxing authority to transfer a lien on its property interest, as opposed to a co-tenant's interest, renders Section 33.46(b) superfluous. On the contrary, *Runels II's* holding means that the right to partition under Section 33.46(b) is not necessary to protect the property interest of a co-tenant who does not authorize the transfer of a lien under Section

37

32.06 because the transferred tax lien is only valid with respect to the interest owned by the co-tenant who authorized the lien transfer under Section 32.06. The right to partition under Section 33.46(b) protects a co-tenant's undivided property interest when the taxing authorities file suit to foreclose on a lien on the entire property.

Casey Lending argues that *Runels II* was also "improperly decided because it relied on [*Trimble,*] a 1957 opinion construing the 1933 version of the Tax Code." We disagree with Casey Lending on this point as well.  Section 32.06(a-1) and (a-2) of the Tax Code state:

> (a-1) *A property owner* may authorize another person to pay the taxes imposed by a taxing unit on *the owner's real property* by executing and filing with the collector for the taxing unit:
>
> > (1)    a sworn document stating:
> >
> > > (A)    the authorization for payment of the taxes;
> > >
> > > (B)    the name and street address of the transferee authorized to pay the taxes of the property owner;
> > >
> > > (C)    a description of the property by street address, if applicable, and legal description; and
> > >
> > > (D)    notice has been given to the property owner that if the property owner is disabled, the property owner may be eligible for a tax deferral under Section 33.06; and
> >
> > (2)    the information required by Section 351.054, Finance Code.
>
> (a-2) Except as provided by Subsection (a-8), a tax lien may be transferred to the person who pays the taxes on behalf of the property owner under the authorization described by Subsection (a-1) for:

38

> (1) taxes that are delinquent at the time of payment; or
>
> (2) taxes that are due but not delinquent at the time of payment if the property is not subject to a recorded mortgage lien.

TEX. TAX CODE § 32.06(a-1)–(a-2) (emphasis added). Article 7345a, sec. 1, which *Trimble* interpreted, states that a taxing authority is "hereby authorized and empowered and it shall be his duty to transfer and convey to any person or company that pays to the State, county or any subdivision thereof mentioned hereinbefore, *any taxes due upon real property at the request of the owner of said property*, the tax lien held by such State, county, or subdivision to secure the payment of such taxes, under conditions hereinafter provided and not otherwise." We see no meaningful distinction between Section 32.06, which states that "*[a] property owner* may authorize another person to pay the taxes imposed by a taxing unit *on the owner's real property*," and its predecessor, Article 7345a, which requires taxing authorities to transfer, to a person or company who pays "any taxes due upon real property at the request of *the owner of said property*," the tax liens held to secure payment of such taxes.[18]

---

[18] Casey Lending also argues that *Runels II*, which discussed *Mahan v. Lehman*, No. 03-00-00382-CV, 2001 WL 252075, at * 4–5 (Tex. App.—Austin 2001, no writ) (mem. op., not designated for publication) is inapplicable because it did not address whether one of several undivided interest holders in real property could authorize the transfer of a tax lien. We agree that *Mahan* is distinguishable, but we also note that *Runels II's* holding is based on *Trimble*, not *Mahan*. *See Runels II*, 2024 WL 4994307, at *2 (discussing *Mahan* and stating that while "the actual holding in *Mahan* is inapposite to our case," the "authority and dicta mentioned by the *Mahan*

We are bound by *Trimble* and although *Runels II* is not binding authority, we find its analysis, particularly its discussion of *Trimble*, to be persuasive. Pursuant to *Runels II* and *Trimble*, we hold that although Thomas had the ability to contract with Casey Lending to pay the portion of the delinquent taxes levied against his interest in the Property and Casey Lending could acquire and enforce the tax lien with respect to the portion applicable to Thomas' interest, Thomas could not contract with Casey Lending to pay the taxes levied against Smith's purported one-third undivided interest in the Property, nor could Casey Lending enforce the portion of a tax lien levied against Smith's property interest.

We thus hold the trial erred by granting summary judgment in favor of Casey Lending on its claim of statutory subrogation under Section 32.06. We express no opinion as to whether Casey Lending had the right to foreclose on Smith's property interest on another basis, including under the doctrine of equitable subrogation.

**Smith's Motion to Reconsider**

On remand, Phan moved for summary judgment on Smith's third-party claims. Smith filed a combined motion to set aside the order granting Casey Lending's motion for summary judgment, response to Phan's motion for summary judgment, and response to Phan's motion to vacate the temporary injunction. Casey

---

court are of interest," and the "authority of interest is the very '*Trimble* decision' to which *Mahan* alluded").

40

Lending in turn filed a response to Smith's motion to reconsider. To the extent Smith relies on arguments raised for the first time in her motion to reconsider the trial court's order granting Casey Lending's motion for summary judgment or in Casey Lending's response to her motion, we decline to address those arguments on appeal.

"When a motion to reconsider is filed after the rendition of summary judgment, a trial court has the discretion to consider the grounds in the post-judgment motion and supporting proof, and reaffirm its summary judgment based on the entire record." *PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 729 (Tex. App.—San Antonio 2014, pet. denied) (cleaned up) (quoting *Charbonnet v. Shami*, No. 04-12-00711-CV, 2013 WL 2645720, at *5 (Tex. App.—San Antonio June 12, 2013, pet. denied) (mem. op.)). However, the trial court also has the discretion "to simply deny a motion filed after the entry of summary judgment without considering its substance." *Id.* at 730. In that case, "an appellate court need only consider arguments and evidence presented prior to the summary-judgment hearing." *Id.* But if the trial court "affirmatively indicates on the record that it accepted or considered the evidence attached to a motion to reconsider, this court reviews 'the summary judgment based upon the grounds and proof in both prejudgment and post-judgment filings.'" *Id.* (quoting Timothy Patton, *Summary Judgments in Texas*, § 7.06[1] (3d ed. 2012)).

Smith's motion to reconsider the trial court's ruling on Casey Lending's motion for summary judgment was denied by operation of law. Consequently, there is nothing in the record affirmatively indicating that the trial court accepted or considered the arguments raised for the first time in Smith's motion to reconsider or in Casey Lending's response to the motion to reconsider.[19] *See PNP Petroleum*, 438 S.W.3d at 730 (stating "efficacy of a post-judgment motion to preserve a complaint for appellate review depends upon whether the trial court affirmatively considers the new grounds and proof as memorialized by a written order") (quoting *Charbonnet*, 2013 WL 2645720, at *5).

---

[19] In her motion to reconsider the summary judgement rendered in Casey Lending's favor, Smith argued for the first time that Thomas did not comply with Chapter 65 of the Texas Property Code, and he was thus prohibited from "pledging and effectively adding encumbrances (18% + interest, etc.,) onto Smith's interest in the Home." *See* TEX. PROP. CODE 65.002. In its response to Smith's motion to reconsider, Casey Lending argued that it was entitled to summary judgment because Smith failed to deposit into the court's registry an amount equal to the delinquent taxes, penalties, and interest specified in the foreclosure judgment, as required by Section 34.08(a) of the Tax Code, and she was thus barred from commencing her bill of review challenging the validity of the tax sale to Phan. TEX. TAX CODE § 34.08. And, because Smith did not comply with Section 34.08(a) before the limitations period expired, her claim to set aside the foreclosure is time barred. We express no opinion as to the merits of Smith's and Casey Lending's arguments on these issues.

We thus do not consider Smith's arguments presented for the first time in her motion for reconsideration or Casey Lending's arguments raised in response to Smith's motion. *See PNP Petroleum*, 438 S.W.3d at 730. [20]

**Counterclaims and Third Party Claims**

When Smith filed her bill of review challenging the 2017 Judgment, she included in the same document a petition advancing new counterclaims against Casey Lending and new third-party claims against Phan for declaratory judgment, suit to quiet title, and trespass to try title.[21] Smith filed her combined bill of review and petition in the same court that entered the 2017 Judgment. Rather than filing the pleading as a separate suit, however, Smith filed her pleading under the same cause number as the original suit.

Casey Lending objected to Smith's multifarious pleading. It argued, among other things, that because the trial court's plenary power over the 2016 Tax Suit had

---

[20]   To the extent Smith raises a new appellate argument in her reply brief, we decline to consider it on appeal. *See Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue not raised in the appellant's original brief."); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court."); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied) ("The rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised by appellant's original brief."). We express no opinion as to the merits of these arguments.

[21]   Phan was not a party to the 2016 Tax Suit.

expired, the trial court lacked jurisdiction to consider Smith's new counterclaims and third-party claims. With respect to Smith's bill of review, Casey Lending argued the bill of review was improper because it was filed under the same cause number as the original suit rather than as an independent suit with a new cause number.

A bill of review is a separate and independent suit, brought in the same court that entered the judgment being attacked under a different cause number. *See In re Thompson*, 569 S.W.3d 169, 173–74 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Amanda v. Montgomery*, 877 S.W.2d 482, 485 (Tex. App.—Houston [1st Dist.] 1994, no pet.). "The requirement that a bill of review be filed in the same court that rendered the judgment under attack is a matter of jurisdiction, not merely a matter of venue." *Richards v. Commission for Lawyer Discipline*, 81 S.W.3d 506, 508 (Tex. App.—Houston [1st Dist.] 2002, no pet.). But the incorrect filing of a bill of review using the same cause number as the original proceeding is not a jurisdictional defect. *See In re Thompson*, 569 S.W.3d at 174 ("Some courts have held that a bill of review should not be dismissed solely on the basis that it was misfiled in the same case as the challenged judgment, rather than in a new action."). The trial court thus did not err in denying Casey Lending's motion to strike the bill of review on that basis.

Although a trial court may consider a bill of review incorrectly filed in the same cause number as the original proceeding, the filing of the bill of review challenging the final judgment in the original proceeding does not revive the court's

plenary power to entertain new claims. *Cf. Wells v. Maxey*, No. C14-92-00789-CV, 1993 WL 143364, at *3 (Tex. App.—Houston [14th Dist.] May 6, 1993, writ denied) (not designated for publication) ("Appellant also states the bill of review served to revive the original cause. We disagree."). Generally, a trial court's plenary power terminates thirty days after the date the judgment is signed. TEX. R. CIV. P. 306a.1, 329b(d). Smith filed her combined bill of review and petition asserting new counterclaims against Casey Lending and new third-party claims against Phan in June 2019. The trial court's plenary power over the 2017 Judgment expired long before Smith filed her counterclaims and third-party claims in the 2016 Tax Suit. We thus agree with Casey Lending that the trial court lacked jurisdiction to consider them.

Because the trial court lacked jurisdiction over Smith's counterclaims against Casey Lending and third-party claims against Phan, those claims must be dismissed for lack of jurisdiction.

## Conclusion

We dismiss Smith's counterclaims against Casey Lending and third-party claims against Phan for lack of jurisdiction. We reverse the trial court's summary

judgment in favor of Casey Lending and remand for further proceedings. [22] Any

pending motions are dismissed as moot.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.
Gunn, J., concurring.

---

[22]  We note that allowing a bill of review to remain in the same cause number as the original proceeding creates unnecessary confusion and is best remedied by severing the bill of review into a separate cause number so that the merits of the case may be properly litigated in that new cause number. *See Alaimo v. U.S. Bank Tr. Nat'l Ass'n*, 551 S.W.3d 212, 216 (Tex. App.—Fort Worth 2017, no pet.) (recognizing that, when a bill of review is granted, parties proceed to final judgment on the merits of the underlying claims in a bill of review proceeding, not in the underlying case in which the judgment was vacated); *White v. Walsh*, No. 04-18-00609-CV, 2019 WL 3432091, at *3 (Tex. App.—San Antonio July 31, 2019, no pet.) (mem. op.) ("Once a bill of review is granted all subsequent filings should be made in the bill of review proceeding and not the prior case."); *see also Postell v. Tex. Dep't of Pub. Welfare*, 549 S.W.2d 425, 426–27 (Tex. App.—Fort Worth 1977, writ ref'd n.r.e.) (stating that when bill of review is filed in the same cause number as the original proceeding, "the trial court should transfer it to an independent position on the docket"); *Amanda v. Montgomery*, 877 S.W.2d 482, 485 (Tex. App.—Houston [1st Dist.] 1994, no writ) (holding trial court abused its discretion in refusing to sever bill of review into separate cause number).